[Civ. No. 6227. Third Appellate District.—September 17, 1940.]

W. GILMAN SNYDER, Respondent, v. PINE GROVE LUMBER COMPANY et al., Appellants.

Levinsky & Jones and Jones & Quinn for Appellants.

662

Snyder & Snyder, George F. Snyder, Gumpert & Mazzera and J. Calvert Snyder for Respondent.

THE COURT.—This action, by the respondent as the purchaser at a foreclosure sale, was for the recovery from the appellants of the value of the use and occupancy of the foreclosed premises, and for declaratory relief respecting the title to the property involved. Judgment was entered in favor of respondent, from which this appeal is taken.

In 1927, a corporation, of which appellant Ed. N. Matson was president and general manager, purchased, upon conditional sales contract, the sawmill involved in these proceedings. This mill, under the management of Mr. Matson, was operated for a while, but the venture was not a success. Payments required to be made under the conditional sales contract were not made, and the mill was repossessed.

In 1933, Mr. Matson tried to induce Mr. J. A. Chichizola to purchase the repossessed sawmill to secure certain timber rights and to finance the removal of the mill to a new location. During these negotiations, Mr. William G. Snyder acted as attorney for Mr. Chichizola. After some investigation Mr. Chichizola refused to advance the necessary money. Mr. Matson then inquired of Mr. Snyder if he knew of any source from which the money might be obtained. After some discussion Snyder told Matson that if he would guarantee that no money or credit in excess of $6,000 would be required to refinance the entire venture, he would obtain that amount. Accordingly, the property involved in this proceeding being then owned by Mr. Chichizola, was deeded to Wm. G. Snyder, with the exception of a small portion owned by Mr. Luigi Galli. Some time later Mr. Galli transferred this parcel to Mr. Snyder. Before Mr. Chichizola, however, would convey the property to Snyder, he required that he assume certain indebtedness which Mr. Chichizola had become obligated to pay for Matson. This Mr. Snyder agreed to do, and paid either to Mr. Chichizola directly or to creditors holding claims against Mr. Matson, for which Mr. Chichizola was chargeable, some $12,000. About the same time Mr. Snyder acquired timber lands necessary to operate the mill, and also acquired title to the sawmill in question. After acquiring this property, Wm. G. Snyder entered into an agreement with the Matsons wherein Snyder agreed to employ Matson

to operate said mill and out of the proceeds thereof to make certain specified payments, and further provided that when all of the terms and conditions had been performed under the contract that the same should be assigned to Matson, except that upon the payment to Matson of $10,000 with interest, an undivided one-half interest in the property and business might be retained by Snyder, and that the residence ''upon the said premises at Pine Grove . . . with the lot on which that residence is situated and enclosed by the fence immediately surrounding same, shall go absolutely to said second party . . . ''.

On April 18, 1934, in order to carry out the agreement to finance the venture Snyder borrowed certain moneys and executed a mortgage upon the property. This mortgage was not paid at its maturity and foreclosure proceedings were commenced, at which sale W. Gilman Snyder, plaintiff and respondent herein, became the purchaser. It is as to his rights in this property that we are here concerned.

█ The first point requiring consideration is as to the legal ownership of the property on April 18, 1934, the date the mortgage was executed. It is alleged in the complaint that on that date Wm. G. Snyder was the owner of the property in question. This allegation is denied by the appellants. The trial court found in accordance with the allegations in the complaint. There is no pleading by appellants of fraud nor are any facts set forth by defendants which would create a resulting or constructive trust. The evidence shows that the title to all the property here involved originated in a patent from the United States government and through mesne conveyances passed by grant deed to Ed. N. Matson and wife, except a small piece belonging to one Luigi Galli, which was by him conveyed by grant deed to Wm. G. Snyder about three months after Snyder had acquired title to the larger tract.

We need not here set forth the various code sections pertaining to the presumptions to be indulged in from the use of the word ''grant'' in a grant deed.

█ A grant deed carries with it a warranty that previous to the time of the execution of such conveyance the grantors had not conveyed the same or any right, title or interest therein to any person other than the grantee, and such estate was at that time free from encumbrance done, made or suf-

fered by the grantors or any person claiming under such grantors.

An examination of the chain of title does not show any conveyance at any time from Matson or his wife, other than a grant deed from them to M. J. Spinetti on December 30, 1929. Some two or three years thereafter, Spinetti conveyed all of his interest in the property to Chichizola, the immediate grantor of Wm. G. Snyder. There is a claim by appellants that some of these deeds were in effect mortgages, but the trial court has not so found, and there is ample evidence to support the finding that Wm. G. Snyder was the legal owner of the premises involved on the date in question.

It is also alleged in the complaint, and the court found, that on the 18th of April, 1934, Wm. G. Snyder and his wife, executed a mortgage on the property here involved to C. Soracco Company, which mortgage was duly foreclosed and the property regularly sold in foreclosure proceedings, and at said sale W. Gilman Snyder, the plaintiff and respondent herein was the purchaser of said property and received a certificate of sale therefor.

There is sufficient evidence in the record to support this finding, and that the mortgage was regularly foreclosed and the sale on foreclosure made as alleged in the complaint. The complaint alleges further that the defendant Matson and his wife had been in possession of the above-described premises as tenants in possession under said Wm. G. Snyder. The answer admitted that the Matsons had been in possession, but in effect denied that they were in possession thereof as a tenant of Snyder, and on the contrary alleged that they were, on the date in question and ever since have been, the owners of said property and holding adversely to Snyder.

We have heretofore found from the chain of title that Wm. G. Snyder was the record owner of the property and that appellants Matson and his wife were lessees or tenants of the property under a lease from M. J. Spinetti. It would therefore seem that by virtue of the provisions of section 326 of the Code of Civil Procedure that appellants are precluded from setting up or claiming adverse possession against Wm. G. Snyder, successor in interest to Spinetti.

It is also in evidence that Snyder as legal owner of the property, paid all of the taxes which were levied or assessed against the property during the period appellants claim ad-

verse possession. Shortly before the property was conveyed by Chichizola to Snyder, in a conversation between Matson and Soracco, Mr. Matson stated that he did not own the property and that it belonged to Mr. Chichizola.

Obviously the trial court was amply supported in finding that appellants Matson and his wife occupied and used the premises as tenants in possession.

■ The second main contention of appellants is that the court erred in considering the prayer for declaratory relief, contending that it was outside the issues of the case and was unsupported by either the evidence or the pleadings.

The trial court found that plaintiff was entitled to declaratory relief declaring plaintiff to be the owner of the property, subject only to the right of redemption, and that his title thereto, subject to such right, be quieted against any and all claims of the defendants and perpetually enjoining and restraining said defendants from making any claim to or upon said property adversely to plaintiff.

An examination of the pleadings shows that there was an actual controversy between the parties as to the rights of respondent in the property arising from his purchase of the property at the foreclosure sale, and it was entirely proper inasmuch as the matter was before the court, that all issues be determined in the event there was no redemption from the foreclosure sale.

■ Some point is made as to certain discrepancies appearing in two copies of the agreement, one in possession of Wm. G. Snyder and the other in the possession of the Matsons. The agreement was pleaded by the appellants and attached as an exhibit to their answer. By a verified denial the respondent denied a due execution of the agreement as shown by the exhibit, and alleged that through a mistake in the original draft the words ''second party'' therein should have been ''first party''. Testimony was adduced showing how such a mistake could have been made, and a reading of the entire instrument clearly indicates such a mistake. The court found upon conflicting testimony that the contract, as contended by respondent was the contract of the parties which precludes us from going further into this dispute.

■ Some contention or claim is made that a trust had been created by the agreement between the parties. There is no

allegation in any of the pleadings that raises any issue as to a trust relationship.

An analysis of the relationship between the parties indicates that Wm. G. Snyder acquired the mill and timber lands from third parties and that he employed Mr. Matson to manage and operate the business with an ultimate view of making sufficient money to reimburse himself. As an inducement to Snyder to go into the venture Matson guaranteed that he would not be required to advance funds or credit in excess of the sum of $6,000. The contract seems to be a contract of employment with certain conditions precedent to be performed by Matson whereupon the title to the property described would be conveyed to Matson. None of these conditions precedent were performed. Matson was never in a position to demand that the property be conveyed to him. It would first be necessary for Matson to show that he had performed the terms and conditions of the contract upon his part before he would be entitled to the benefits set out.

On April 2, 1936, a homestead was declared on the premises occupied as a residence by Mr. and Mrs. Matson, and it was claimed the court erred in not setting aside this homestead to them. It appears, however, that part of this residence was used for the keeping of the books of the business of the lumber yard and mill, but further it would seem that the Matsons never had such title or were in such possession of the property as to justify a claim of homestead thereon. The taxes were paid by Wm. G. Snyder, and his claim thereto was based upon a grant deed, which deed Matson had caused Chichizola to execute to Snyder, and after the conveyance of the property to Snyder, the Matsons had executed a quitclaim deed of the property to Spinetti, the predecessor in interest to Wm. G. Snyder.

There is nothing in the use or occupation of this property that would show any inconsistency in the record title of Wm. G. Snyder or inconsistent with the occupancy of the property by Matson as a tenant of Snyder.

A careful examination of the entire record convinces us that the judgment from which this appeal is taken should be affirmed, and it is so ordered.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 16, 1940.