ALEXANDER B. JOHNSTONE, PLAINTIFF AND RESPONDENT, v. BRUCE W. SANBORN, DEFENDANT AND APPELLANT.

No. 10123.

Submitted June 14, 1960. Decided November 30, 1960.

Rehearing Denied December 16, 1960.

358 P.2d 399.

Ralph J. Anderson, Helena, argued orally for appellant.

Floyd O. Small, Myles J. Thomas, Helena, argued orally for respondent.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This is an action to quiet title to certain described land situated in Lewis and Clark County. It was commenced on March 8, 1955.

Plaintiff recovered judgment and defendant has appealed therefrom. The following facts appear. In 1933, defendant Sanborn claimed to be the owner of the property in question, and on April 3, 1933, he leased it to Johnstone by a written lease. Johnstone took possession and has ever since occupied the premises. Before the lease was made and some time in 1931 the property had been sold for delinquent taxes and a tax sale certificate dated July 24, 1931, had been issued. The lease contained this paragraph:

"It is understood and agreed that there are now delinquent taxes against this property and that if Lessor is unable to pay

the taxes or should lose possession of the property, this lease shall be immediately terminated and Lessor shall not be responsible for any work theretofore done by Lessee.''

On December 31, 1935, the county took a tax deed. On February 26, 1936, Johnstone entered into a contract to purchase the property from the county. He completed payment on the contract and obtained a deed from the county on May 11, 1940.

In 1941, the tax deed issued on December 31, 1935, was held by this court to be invalid. Sanborn v. Lewis and Clark County, 113 Mont. 1, 120 P.2d 567. This court affirmed the district court's order that $1,213.41 be deposited by Sanborn to protect Johnstone for taxes paid and costs of improvements made on the premises and expenditures for the protection of the property. Thereafter, the district court made an order requiring Sanborn to make additional deposits under section 2214, R.C.M. 1935 (now R.C.M. 1947, § 84-4158). A petition for modification of that order was filed and also a motion to strike the petition for modification. These motions and petitions were brought on for hearing in the district court on January 11, 1957. Johnstone then filed a motion to dismiss the proceeding for want of diligent prosecution. The district court denied the motion to dismiss, but this court ruled it should have been granted with prejudice. State ex rel. Johnstone v. District Court, 132 Mont. 377, 319 P.2d 957. That opinion was rendered on November 14, 1957, which was more than two years after this action was commenced. The district court in the instant case ruled in substance that Johnstone became the owner of the property by adverse possession.

Counsel for Sanborn contend that the issue of adverse possession cannot be determined in favor of Johnstone because of the provisions of section 93-2512, reading:

''When the relation of landlord and tenant has existed between any persons, the possession of the tenant is deemed the possession of the landlord until the expiration of ten years

from the termination of the tenancy, or, where there has been no written lease, until the expiration of ten years from the time of the last payment of rent, notwithstanding such tenant may have acquired another title, or may have claimed to hold adversely to his landlord. But such presumptions cannot be made after the periods prescribed in this section.''

That section of the statute was designed to prevent the lessee from questioning the title of his landlord.

Here, by the very terms of the lease, Sanborn pointed out the weakness and the precarious nature of his title. To all intents and purposes he invited Johnstone to take whatever steps he desired to acquire title adverse to that of Sanborn in the event that the latter lost the right of possession or failed to redeem the property by paying the delinquent taxes. He was unwilling to assume all the burdens and responsibilities of a landlord under the circumstances, since he was unwilling to stand responsible for improvements made by Johnstone as a tenant. In legal effect, Sanborn by the terms of the lease, waived the benefit of section 93-2512.

It is, of course, permissible for a party to waive the advantage of a law intended solely for his benefit. Section 49-105.

In reaching the foregoing conclusion, we have assumed, without so deciding, that section 93-2512 is valid. There is considerable doubt whether such a statute is valid in view of the holding in Lowery v. Garfield County, 122 Mont. 571, 208 P.2d 478. In the Lowery case, this court held that it was not competent for the Legislature to pass a special statute fixing a short statute of limitations applicable to only certain persons and individuals, leaving all others in the same circumstances subject to the general statute of limitations. It would seem that for the same reasons, the Legislature may not pass a special act fixing a long statute of limitations, applicable only to certain persons, leaving all others subject to the general statute of limitations.

Section 93-2512, in substance, requires adverse possession for twenty years, as against a landlord whereas, if a servant takes possession of land with the consent of the owner he may obtain title by adverse possession in ten years (now five years under section 93-2507) by repudiating the relationship and giving notice thereof to the owner. 2 C.J.S. Adverse Possession § 88, p. 645. The same is true as to any other relationship except that of landlord and tenant. As above indicated we do not pass upon the constitutionality of section 93-2512, but it can be readily seen that there is serious question regarding its validity.

Also, for another reason the judgment of the trial court must be upheld. It is well-settled that if the result reached by the trial court be correct, it will be upheld regardless of the reasons given for the conclusion.

Here the record of prior litigation between these parties, and which was made a part of the record in this case by stipulation, shows that on May 25, 1944, Judge Horsky entered an order requiring Sanborn to pay to Johnstone the sum of $1,-213.41 together with the sum of $2,041.29. The order recited, in substance, that if Sanborn refused to deposit the money with the clerk of the district court by June 20, 1944, the title would be quieted in Johnstone as provided in what is now section 84-4158, but if the deposit was made title would be quieted in Sanborn.

The deposit was not made as required by that order. The time to make the deposit was never extended. The validity of that order was never assailed. Litigation questioning the amount of the required deposit was not prosecuted with reasonable diligence and the proceeding was dismissed for want of prosecution. In consequence title should be quieted in Johnstone pursuant to the order of Judge Horsky. No other conclusion is permissible under the record from that arrived at by the trial court.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY and CASTLES concur.

MR. JUSTICE ADAIR dissenting:

I dissent.

This action involves the *title* to and the *ownership* of a valuable ranch property comprising 1,120 acres of land in Lewis and Clark County, Montana, situate near the town of Augusta.

This is the *third* separately numbered proceeding involving the *title* to the same land, and the claims of the same contending parties, that has been brought before the Supreme Court of the State of Montana within the past two decades.

The *first* cause was appeal No. 8082, Sanborn v. Lewis and Clark County, et al., 113 Mont. 1, 120 P.2d 567, determined and decided by this court on October 2, 1941, with rehearing denied January 3, 1942.

The *second* was original proceeding No. 9792, State ex rel. Johnstone v. District Court, Lewis and Clark County, et al., 132 Mont. 377, 319 P.2d 957, determined and decided by this court on November 14, 1957, with rehearing denied December 4, 1957.

The lands here involved, together with the dwelling, structures, fences and improvements thereon are particularly described as:

All of Section Two (2); the southeast quarter (SE¼) of Section three (3); and the northwest quarter (NW¼); the north half of the northeast quarter (N½ NE¼) and the west half of the southwest quarter (W½ SW¼) of Section eleven (11) all in Township nineteen (19) north, Range five (5) west, Montana Meridian.

*Sanborn Acquires Title.* On January 29, 1926, by sheriff's deed on foreclosure, bearing that date and duly executed and delivered by James M. Barnes, then the sheriff of Lewis and Clark County, Montana, to the purchaser, Bruce W. Sanborn, and by him duly recorded on December 14, 1926, in the office

of the County Clerk and Recorder of said County, in Book 45 of Deeds at page 294, Bruce W. Sanborn became the true and sole owner of record of all the above-described 1,120 acres of ranch lands and property. As to these facts there was and is no dispute.

*Sanborn Leases to Johnstone.* On April 4, 1933, Bruce W. Sanborn, then the true and sole owner of all the described property, entered into a written lease agreement with Alexander B. Johnstone of Augusta, Montana, whereby, for and in consideration of the stipulated rents to be paid and the covenants to be performed, Bruce W. Sanborn, *as lessor,* let and leased to Alexander B. Johnstone, *as lessee,* all of the above-described lands and premises for a period of six years and Alexander B. Johnstone, *as lessee,* immediately entered into the possession of the lands and premises, *as the tenant* of the landlord, Bruce W. Sanborn and such possession of *the tenant* Johnstone has been uninterrupted since the date of the execution of the aforesaid written lease agreement.

*Purported Tax Deed Issued.* On December 31, 1935, the County Treasurer of Lewis and Clark County assumed to issue and deliver to Lewis and Clark County a tax deed purporting to convey to the county all of the described lands and premises for delinquent taxes claimed to have been owing thereon, and claimed to have been wholly unpaid by any person for the years 1933 to 1935, inclusive.

On March 26, 1936, the purported tax deed so issued and delivered to the County was filed for record in Book 111 of Tax Deeds at page 313, in the office of the County Clerk and Recorder of Lewis and Clark County.

*Tax Deed Was Void.* The requirements of the law, governing the giving of notice of the application for the purported tax deed, were not complied with for which reason the purported tax deed was *unlawfully issued.*

This failure to comply with the plain mandates of the law rendered the attempted conveyance to the county null, *void*

and of no effect and such *void* tax deed wholly failed to convey or pass any title whatever to Lewis and Clark County. See Sanborn v. Lewis and Clark County, et al., 113 Mont. at pages 17, 18 and 19, 120 P.2d at pages 574 to 577, inclusive.

*Johnstone Contracts to Purchase from County.* On February 26, 1936, being but two months after the issuance by the County Treasurer of the above *void* tax deed to Lewis and Clark County, that county, *as purported vendor,* assumed to enter into and make a written contract with Alexander B. Johnstone, *as purported vendee,* then in possession of and occupying the property as *the tenant* of Bruce W. Sanborn, *the landlord* and true owner of such property, by the terms of which written contract, the county agreed to sell and convey to *the tenant* Johnstone, and Johnstone agreed to purchase from Lewis and Clark County all of the described 1,120 acres of land and premises for the total sum of $980 of which $196 was to be paid on February 26, 1936, on the execution of the contract, with the balance to be paid in four annual installments of $196 each payable on the 26th day of February in the years 1937, 1938, 1939 and 1940. However, since the purported tax deed to the county was null, *void* and of no effect the county had acquired no title that it could lawfully sell, convey or pass to Sanborn's *tenant,* Alexander B. Johnstone.

*District Court Cause No. 16386 Commenced.* On December 26, 1936, by complaint that day filed in the District Court for Lewis and Clark County, Montana, Bruce W. Sanborn as plaintiff claiming to be the true and sole owner of the property commenced civil action No. 16386, wherein he sought to quiet *his title* in and to all of the above-described 1,120 acres of lands and premises.

The complaint named, and the action was brought against, but three defendants, namely: (1) Lewis and Clark County; (2) Alexander B. Johnstone; and (3) the latter's wife, Mrs. Alexander B. Johnstone.

*Lis pendens* was duly and regularly filed as provided by

statute and each of the three defendants was regularly served with a copy of Sanborn's complaint and of the summons issued in the action.

The defendant, Lewis and Clark County, defaulted and on January 27, 1937, the defendant County's default was duly and regularly entered. Such default was never opened vacated or set aside.

On February 1, 1937, the defendants, Alexander B. Johnstone and his wife, appeared in such district court Cause No. 16386 by that day serving and filing their joint general demurrer to the plaintiff Sanborn's complaint.

*Section 2214, Rev. Codes 1935 Invoked.* On March 6, 1937, the defendant, Alexander B. Johnstone filed in district court cause No. 16386 his certain *affidavit* invoking the provisions of section 2214, Revised Codes of Montana of 1935, and demanding that the District Court make an order commanding that, before any further proceedings are had in said action, the plaintiff, Bruce W. Sanborn, be required to deposit in the District Court to the use of the defendant, Alexander B. Johnstone, and to the use of Lewis and Clark County, the amount of all taxes, interest and penalties which have accrued if the described property had been regularly and legally assessed and taxed as the property of said true owner, Bruce W. Sanborn, and sold for delinquent taxes and was about to be redeemed by him in the total sum of $1,159.51, together with interest thereon from December 26, 1936, the date of the filing of Sanborn's complaint.

The defendant, Alexander B. Johnstone, in his *affidavit,* further demanded that the District Court also make an order commanding and requiring that the plaintiff, Bruce W. Sanborn, also deposit in the district court the further sum of $2,698.75 as the amount claimed to have been reasonably expended by the defendant, Alexander B. Johnstone, in preserving and improving the described property.

*Order to Show Cause Issued and Served.* On March 6, 1937,

upon the filing of Alexander B. Johnstone's above *affidavit* invoking the provisions of section 2214, Revised Codes of 1935, supra, District Judge A. J. Horsky, then presiding in said cause No. 16386 issued and caused to be served upon the plaintiff Sanborn, an order requiring and commanding that the plaintiff Sanborn deposit in said District Court the sum of $1,159.51 plus the further sum of $2,698.75 making a total sum of $3,858.26 or show cause on March 29, 1937, why said deposit should not be made.

*Order Requiring $1,211.41 Deposit.* The plaintiff Sanborn made and filed his return and answer to said order to show cause wherein Sanborn admitted certain allegations of Johnstone's *affidavit* and denied certain other allegations thereof and thereafter *all the issues* so presented by Johnstone's *affidavit* and Sanborn's return and answer thereto were regularly and fully heard before District Judge A. J. Horsky, sitting without a jury and, after hearing and considering the evidence presented, said Judge on September 11, 1937, made and filed an order commanding that on or before October 11, 1937, the plaintiff, Bruce W. Sanborn, deposit with the Clerk of the District Court the following enumerated sums, viz.:

"The sum of $501.55, said amount being a total of the payments made by the defendant, Johnstone, to the County of Lewis and Clark upon his contract of purchase of the above-described property and the taxes paid by him upon said land for the year 1936; and the additional sum of $711.86 being the amount of all sums reasonably paid and expended by the said Alexander B. Johnstone, successor to the purchaser at tax sale, Lewis and Clark County, after three years from the date of said tax sale, in preserving said property and in making improvements thereon while the said Alexander B. Johnstone has been in possession thereof; making in all a total of $1,213.41 to be deposited herein on or before the 11th day of October 1937, by the plaintiff, Bruce W. Sanborn.

"Done this 11th day of September 1937.

"A. J. Horsky

"District Judge"

*Stipulation Extending Time.* By written stipulation exe-
cuted on October 8, 1937, by counsel for the respective parties
plaintiff and defendant, the plaintiff Sanborn was given to
and including the 1st day of November 1937, in which to make
the deposit required by Judge Horsky's above-quoted order
of September 11, 1937.

*Sanborn Made Required Deposit.* On November 1, 1937, in
compliance with the above-quoted court order, to which order
he took exception, the plaintiff, Bruce W. Sanborn, deposited
with the Clerk of the District Court for Lewis and Clark
County the sum of $1,213.41, to be held by said clerk until
final disposition of district court cause No. 16386, and to be
by the clerk disbursed according to law, which payment and
deposit was made by the plaintiff Sanborn under express
written protest dated October 30, 1937, and filed in the cause
on November 1, 1937.

*Joint Answer Filed.* On November 12, 1937, the defend-
ants, Alexander B. Johnstone and his wife, filed their joint
answer to the plaintiff Sanborn's complaint in quiet title
action No. 16386, wherein they admitted that Lewis and Clark
County was and is a body politic and corporate; denied that
at the time of the filing of his complaint the plaintiff, Bruce
W. Sanborn, then was or that he had been for more than ten
years past, the owner in fee simple of and entitled to the pos-
session of the above-described real property; admitted that
Lewis and Clark County and Alexander B. Johnstone and
his wife "claim a right, title or interest in and to said real
property described in the second paragraph of said complaint
and said defendants deny each and every other allegation in
the third paragraph of said complaint."

The third paragraph of Sanborn's complaint, so answered
by the defendants Johnstone and his wife, reads:

"Third. That the defendants, Lewis and Clark County, a body politic and corporate, Alexander B. Johnstone, and ——— Johnstone, his wife, otherwise known as Mrs. Alexander B. Johnstone, claim some right, title, estate or interest in said real property adverse to plaintiff's ownership, but that all of said claims are wholly void and of no effect and the plaintiff alleges that neither of said defendants, or any of them, has any right, title, estate or interest in or to said real property, or any part thereof whatsoever."

With the filing by the defendants, Alexander B. Johnstone, and his wife, of their above joint answer, quiet title action No. 16386 became and was at issue and ready for trial.

*Trial on Merits.* On February 17, 1939, cause No. 16386 came regularly on for trial before the Honorable A. J. Horsky, district judge sitting without a jury, at which time evidence was introduced on behalf of the plaintiff Sanborn and on behalf of the defendants Johnstone, and at the conclusion thereof, the cause was submitted to the District Court for its decision.

*District Court's Judgment Entered.* On August 25, 1939, District Judge A. J. Horsky gave, rendered and caused to be entered his written findings of fact, conclusions of law and *judgment* in cause No. 16386. The district court's *judgment*, so far as pertinent here, declared and adjudged as follows:

"Wherefore, It Is Ordered, Adjudged and Decreed that the defendant, Alexander B. Johnstone, have judgment as prayed for in his answer to plaintiff's complaint herein against plaintiff herein and that defendant, Alexander B. Johnstone, is the equitable owner and in possession and entitled to absolute possession of the following described real property, to-wit:

"All of Section Two (2); the southeast quarter (SE¼) of Section three (3); and the northwest quarter (NW¼); the north half of the northeast quarter (N½NE¼) and the west half of the southwest quarter (W½SW¼) of Section eleven (11) all in Township nineteen (19) north, Range five (5) west, Montana Meridian.

and that the plaintiff herein has not nor has any person or persons claiming under him any estate, right, title, interest or claim to any of the land herein described, or any right of possession in or to said real property described in the complaint and herein, or any part thereof, and that the defendant recover his costs herein taxed in the sum of $13.50.

"Dated this 25th day of August 1939.

"A. J. Horsky

"District Judge"

*Appeal No. 8082 to Supreme Court.* From the above-quoted *judgment* of the District Court, the plaintiff, Bruce W. Sanborn, on February 21, 1940, perfected a timely and proper appeal to this court, being appeal No. 8082 herein.

*First Oral Argument.* On January 28, 1941, counsel for the respective parties litigant first orally argued appeal No. 8082 before the five justices then constituting this court, namely, Chief Justice Howard A. Johnson, and Associate Justices Albert Anderson, Leif Erickson, Claude F. Morris and Albert H. Angstman, whereupon the appeal was submitted for decision.

The justices experienced considerable difficulty in reaching an agreement as to the disposition of the appeal which resulted in a court order made on June 21, 1941, wherein the justices ordered that appeal No. 8082 be set for *reargument* before the Supreme Court on June 30, 1941, "with particular reference to the following points:

"1. Is the defendants' [Alexander B. Johnstone, et ux.] answer sufficient to entitle them to affirmative relief in the absence of any prayer therefor or of any allegations of title in them?

"2. In determining whether the tax deed constitutes a cloud on the title should the tax proceeding or the tax deed alone be considered?

"3. Has the plaintiff [Bruce W. Sanborn] sufficiently proved that the notice of application for tax deed was not given in the manner and for the time provided by statute?

"4. Can a validating act remedy the defect where the notice was not given for the required period?"

*Second Oral Argument.* On June 30, 1941, appeal No. 8082 was *reargued* before the five justices of this court above-named at which time, Floyd O. Small, Esq., of Helena, appeared as counsel for the respondents Johnstone, and Charles Davidson, Esq., and William F. Browning, Esq., both of Great Falls, appeared as counsel for the appellant, Bruce W. Sanborn, following which *reargument,* the appeal was again submitted for decision.

Thereafter, on October 2, 1941, the Supreme Court of the State of Montana, in an opinion by Justice Albert Anderson, duly made and entered its decision and judgment *reversing* the District Court's decree and judgment of August 25, 1939, so rendered by District Judge A. J. Horsky.

The Supreme Court's decision and judgment on appeal No. 8082, so pronounced on October 2, 1941, generally held that the tax title proceedings under which Lewis and Clark County assumed to take a tax deed to the lands and premises on December 31, 1935, were irregular and invalid, thereby rendering such tax deed null, *void* and of no effect. See Sanborn v. Lewis and Clark County et al., 113 Mont. 1, 120 P.2d 567.

*Petition for Rehearing.* Thereafter, the defendant Johnstone filed in this court a petition for rehearing to which the justices of this court gave further consideration and on January 3, 1942, the Supreme Court amended its opinion of October 2, 1941, and denied Johnstone's petition for rehearing with Mr. Justice Angstman writing a dissent to the majority opinion by Mr. Justice Albert Anderson. See Sanborn v. Lewis and Clark County et al., 113 Mont. 1, 23, 24, 120 P.2d 567, 577.

*No New Trial Allowed.* In his dissenting opinion on appeal No. 8082, supra, Mr. Justice Angstman, in part, said:

"On petition for rehearing I have given further consideration to this case and I am persuaded that *what we should do with it is to send it back for a new trial* on the ground

that, whether the attack is direct or collateral, the pleadings must advise the adverse party of the particular defects relied upon for setting aside the tax title. * * *

"*I think the cause should be remanded for a new trial* after proper issues are raised by appropriate pleadings pointing out the defects in the tax deed proceedings relied upon by plaintiff.

"On the question of the amount of the deposit I agree with the modification made on petition for rehearing." Emphasis supplied.

*Supreme Court's Judgment Pronounced.* Chief Justice Howard A. Johnson and Associate Justices Albert Anderson and Leif Erickson *declined to send the cause back to the district court for the amending of the pleadings, the reframing of the issues, or for a new trial,* as was suggested by Mr. Justice Angstman in his dissenting opinion.

Instead, the three justices signing the majority opinion gave, rendered, pronounced and caused to be entered a simple, clear, easily understood *judgment* wherein the Supreme Court concluded its opinion, decision and *judgment* with these words, viz.:

"The *order* of the district court requiring the deposit of $1,213.41 *will stand.*

"The *judgment is reversed* and *all of the deposit* made by the plaintiff at the commencement of the action *is ordered to be paid to the respondent.*" Emphasis supplied.

As this court said in Central Montana Stockyards v. Fraser, 133 Mont. 168, 186, 320 P.2d 981, 991:

"This was and is a plain unqualified reversal. To reverse a judgment or order means to overthrow it by a contrary decision, to make it void. When a judgment or order is reversed it is as if never rendered or made. Raun v. Reynolds, 18 Cal. 275, 276, 290."

*Supreme Court Clerk's Duty.* Section 9753, Revised Codes of Montana of 1935 (now R.C.M.1947, § 93-8025), in part, provides:

. "When judgment is rendered upon the appeal, *it must be certified by the clerk of the supreme court* to the clerk with whom the judgment-roll is filed, or the order appealed from is entered. * * *" Emphasis supplied.

. The records in the office of the Clerk of the Supreme Court show that on April 1, 1942, the Clerk of the Supreme Court issued a remittitur in appeal No. 8082 wherein was incorporated and set forth a full, true and correct copy of the *judgment* rendered by the Supreme Court upon the appeal, which judgment of the appellate court *reversed the judgment of the District Court* of August 25, 1939.

Attached to the remittitur was a full, true and correct copy of the majority opinion written by Mr. Justice Albert Anderson with Chief Justice Howard A. Johnson and Associate Justice Leif Erickson concurring, and also a full, true and correct copy of Mr. Justice Angstman's dissenting opinion, all properly certified by the Clerk of the Supreme Court to the Clerk of the District Court for Lewis and Clark County with whom the judgment roll in district court civil cause No. 16386 was and is filed, as is provided for and required by section 9753, Rev.Codes of 1935 (now R.C.M.1947, § 93-8025) and section 2 of Supreme Court Rule XXI.

This done, the Clerk of the Supreme Court had fully performed his duty under the statute, section 9753, supra, and the rules of the Supreme Court.

*District Court Clerk's Duty.* Section 9753, Rev. Codes of Montana of 1935 (now R.C.M.1947, § 93-8025), further provides:

"* * * In cases of *appeal from the judgment, the clerk with whom the roll is filed must attach the certificate to the judgment-roll, and enter a minute of the judgment of the supreme court on the docket against the original entry.* In cases of appeal from an order, the clerk must enter at length in the records of the court the certificate received, and minute against the entry of the order appealed from, a reference to the certi-

ficate, with a brief statement that such order has been affirmed, reversed, or modified by the supreme court on appeal.'' Emphasis supplied.

The records in the office of the Clerk of the District Court for Lewis and Clark County, with whom the judgment roll is filed, show that the certificate, being the remittitur issued by the Clerk of the Supreme Court, was received by the Clerk of the District Court on April 17, 1942, and on that day filed in district court cause No. 16386.

Under the provisions of Section 9753, supra, it became and was the duty of the Clerk of the District Court for Lewis and Clark County, with whom the judgment roll is filed, upon receipt of the Supreme Court's decision and *judgment,* and the accompanying certificate from the Clerk of the Supreme Court, to attach such certificate to the judgment roll and enter a minute entry of such judgment of the Supreme Court on the docket against the original entry. These duties the Clerk of the District Court promptly, fully and properly performed.

*Plaintiff Sanborn's Duty.* Section 9805, Revised Codes of 1935, now R.C.M.1947, § 93-8621, provides:

''(9805) *Costs on appeal—how claimed.* Whenever costs are awarded to a party by an appellate court, if he claims such costs, he must, within thirty days after the remittitur is filed with the clerk below, deliver to such clerk a memorandum of his costs, verified as prescribed in section 9803 [now R.C.M. 1947, § 93-8619] and thereafter he may have an execution therefor as upon a judgment.''

On April 27, 1942, being but ten days after the remittitur was filed with the Clerk of the District Court, the appellant Sanborn, by and through his counsel of record, Charles Davidson, Esq., duly served upon the respondents Johnstone and filed in the office of the Clerk of the District Court in cause No. 16386, a typewritten memorandum of appellant's costs and disbursements, aggregating the sum of $211.42 which was duly verified by appellant's counsel as provided and permitted by

section 9803, Rev. Codes of Montana of 1935 (now R.C.M. 1947, § 93-8619).

By these acts the appellant Sanborn made timely and proper claim and demand for reimbursement for his costs on his appeal to this court, cause No. 8082. Sanborn fully complied with all the requirements of section 9805, supra.

· The respondents Johnstone failed and omitted to file any objections to the appellant Sanborn's memorandum of costs and disbursements or to any part thereof.

The respondents Johnstone likewise failed and omitted to file any motion to tax or retax costs.

It follows that the sum of $211.42, claimed in the memorandum of costs, became due and owing to the appellant Sanborn, who, under the statute, became and was entitled to "have an execution therefor as upon a judgment." Section 9805, Rev.Codes of 1935.

*Final Judgment Entered.* On April 17, 1942, the day whereon the Supreme Court's remittitur on appeal No. 8082 was filed in his office, the Clerk of the District Court promptly made and entered on the judgment docket in cause No. 16386 against the original entry of the judgment rendered by District Judge Horsky on August 25, 1939, the minute of the Supreme Court's judgment as follows, viz.:

"Filed Remittitur April 17, 1942, Judg. reversed & all the deposit made by Pltf. at commencement of action is ordered paid to respondent."

When, pursuant to its opinion, judgment and remittitur on appeal No. 8082, the Supreme Court's *judgment* was filed and entered in the District Court for Lewis and Clark County in Civil Cause No. 16386, such *judgment* nevertheless, remained and continued to be the *judgment* of this, the Supreme Court of the State of Montana. Kimpton v. Jubilee Placer Mining Co., 22 Mont. 107, at page 109, 55 P. 918, at page 919.

"By these acts the judgment of the Supreme Court was properly and legally *entered* in the District Court * * *

and the requirements of section 8805, Revised Codes [now R.C.M.1947, § 93-216] providing that this court's 'judgment in appealed cases must be remitted to the court from which the appeal was taken' as well as the requirements of section 9753 [now R.C.M.1947, § 93-8025] were fully complied with to the letter. *Nothing further or more formal is required to comply with the mandate of the statute* and to effectively and legally enter, in the District Court, the appellate court's judgment on remand." Emphasis supplied. Woodward v. Perkins, 119 Mont. 11 at page 16, 171 P.2d 997, 998, 999.

In Reynolds v. Hosmer, 45 Cal. 616, at page 628, the Supreme Court of California said:

"* * * When the Supreme Court *reversed* the judgment of the Circuit Court * * * and its mandate was filed in the lower Court, showing those facts, *the judgment was reversed, whether the lower Court afterwards made any order conforming its judgment to that of the Supreme Court or not.* If the plaintiffs have any rights here, they come from the reversal by the Supreme Court, and not from any subsequent action or want of action by the Circuit Court." Emphasis supplied.

In Hutchison v. Reclamation District No. 1619, 81 Cal. App. 427, at page 438, 254 P. 606, at page 611, the California District Court of Appeal, in reversing a judgment said: "Here the original claim was for $2,422 based upon an implied contract to pay the reasonable value of the services rendered. Upon the trial of that issue the court determined that the reasonable value of the services was $2,116 and judgment for that amount was entered on July 10, 1922. * * * *This judgment became final by the filing of the remittitur on July 28, 1924.*" Emphasis supplied.

In State ex rel. Dolenty v. District Court, 42 Mont. 170, at pages 173, 174, 111 P. 731, 732, this court said:

"The judgment which is to be entered in Dolenty v. Rocky Mountain Bell Telephone Company [41 Mont. 105, 108 P. 921]

is the judgment rendered by this court. [Citing statute.] Upon filing the *remittitur* with the clerk of the district court there was then nothing remaining to be done but the entry of that judgment, *and the duty of making such entry is imposed by the statute upon the clerk* of the district court, *and not upon the court or judge.*" Emphasis supplied.

Neither the statute nor the Supreme Court's remittitur required that the *district judge* do or perform any act to make the Supreme Court's *final judgment* effective and binding upon each and all of the parties litigant, as well as upon all the courts of this state regardless of whether they be trial or appellate courts.

The Supreme Court's judgment filed and entered in the District Court on April 17, 1942, became, was, and it continues to be the judgment that finally determined the rights of the plaintiff as well as the rights of the defendants in district court action No. 16386.

Section 93-4701, R.C.M.1947, reads:

"93-4701. (9313) *Judgment defined.* A judgment is the *final determination* of the rights of the parties in an action or proceeding." Emphasis supplied.

The record, filed in the Supreme Court on Sanborn's appeal No. 8082, shows that the defendants, Lewis and Clark County, Alexander B. Johnstone, and Mrs. Alexander B. Johnstone, had no defense whatever to the plaintiff Sanborn's suit, No. 16386, to quiet his title to the described real property.

In State ex rel. LaFrance Copper Co. v. District Court, 40 Mont. 206, at page 211, 105 P. 721, at page 723, it was held that this court "will not hesitate to order a judgment for the plaintiff when the defendant's case, as made in the court below, no prejudicial error having been committed against him, shows that he has no defense to the action.

"We have taken the opportunity to comment thus at length upon the matters presented by the petition of the relator, for the reason that we believe the time has come when this court

should exercise its undoubted authority to take the initiative in disposing of litigation as expeditiously as possible, and with the least expense to suitors.''

*The Deed Is Void.* This court, in its majority opinion and judgment on appeal No. 8082, definitely and squarely decided and held that ''the *tax deed* should not have been issued by the county treasurer and *the deed is void.''* Sanborn v. Lewis and Clark County, 113 Mont. 1, at page 18, 120 P.2d 567, at page 575. Emphasis supplied.

The above opinion and judgment, 113 Mont. at pages 16, 17, 19 and 22, 120 P.2d 574, 577, further held, *inter alia:*

''The question of the validity of the tax deed was therefore properly made an issue in this case, and the evidence offered by the plaintiff of the tax title proceedings was material to the issue, and *the court erred in excluding it from consideration and in refusing to consider the question of the validity of the tax deed.* * * *

''In applying for a tax deed under the ordinary statutory method, the matter of importance is the giving of notice of the application. The purpose of the notice is to warn the landowner, and the others interested, of the impending issue of the tax deed and the termination of the right of redemption coincident therewith. The giving of the notice is jurisdictional and unless the requirement of the law in respect to such notice is complied with and proven by affidavit filed with the county treasurer, the tax deed should not issue. The statute, section 2212, R.C. [1935, now R.C.M. 1947, § 84-4156] so provides. * * *

''From examination of the evidence respecting the notice of application for the tax deed, as it has already been set forth herein, it appears clearly that the requirement of the law as to notice was not complied with. * * * The defects and deficiencies in the service of the notice are so many, in fact not a single item of requirement of the law as to notice was complied with, that we have no hesitancy in saying that the notice

required by law was not given. *Therefore the tax deed should not have been issued by the county treasurer and the deed is void.* * * *

"There is no validating act which cures the defects in the service of the notice in this case. * * * Here there are defects and omissions in the service of the notice, such as to show a complete failure to follow the requirements of the law in that respect, and which render the tax deed application proceedings clearly insufficient without regard to the statement in the notice of the amount required to redeem. * * *

"*Johnstone, at the time of the tax sale, was in possession of the property under a lease from Sanborn, and has remained in possession throughout the entire period since the tax sale.* Under his lease he was required to look after the premises and make certain improvements, and appellant contends that because of such tenant relation, when the tax deed is declared to be void, Johnstone can make no claim for improvements and money expended in protection of the property, for that was required of him under the lease. Also, it is contended that the rental value of the premises during the period of occupancy since the issuance of the tax deed should be deducted from the amount allowed.

"There were improvements made and money expended other than such as required by the lease, and a sufficient amount of it after the issuance of the tax deed to make up the amount allowed. *All these matters were presented to the trial court,* and the sum of $711.86 was determined upon as reasonable under the facts and circumstances presented. * * *

"The order of the district court requiring the deposit of $1,213.41 will stand.

"*The judgment is reversed and all of the deposit made by the plaintiff at the commencement of the action is ordered to be paid to the respondent.*" Emphasis supplied.

*Res Judicata.* The Supreme Court's opinion and judgment on appeal No. 8082, adjudging the tax proceedings and the

purported tax deed to be null and void defeated and set at naught the attempt by the *tenant* Johnstone to wrest from his *landlord* Sanborn the latter's title to the described real property.

In Central Montana Stockyards v. Fraser, 133 Mont. 168, at page 186, 320 P.2d 981, 991, this court said:

"Where pursuant to the supreme court's mandate \* \* \* its judgment was filed and entered in the district court for Fergus County in cause of action No. 19805 such judgment remained and continued to be the judgment of the Supreme Court and *by that judgment the questions which did actually arise on the hearing* in the district court *and those which could have been there presented, as well as the rights of the parties litigant,* i. e., the rights and claims of the Frasers and the Clarks and Owens, in and to the attached property were *fully considered, determined and adjudged and became and are res judicata.* Kimpton v. Jubilee Placer Mining Co., 22 Mont. 107, at page 109, 55 P. 918, at page 919.

"In Columbia Mining Co. v. Holter, 1 Mont. 429, at page 432, the Supreme Court, in speaking of a remittitur and mandate regularly and properly issued, said:

" 'The mandate was the imperative command of a supervisory to a subordinate court.

" 'The court below was powerless to disobey.

" 'Disobedience would have been error, and, if admitted, the authority of this tribunal as a supreme and supervisory court would be annihilated.'

"In 2 Freeman on Judgments, 5th ed. § 639 at pp. 1345, 1346, it is said: 'The judgments of appellate courts are as conclusive as those of any other court. *They not only establish facts, but also settle the law, so that the law as decided upon any appeal must be applied to all the subsequent stages of the cause, and they are res judicata in other cases as to every matter adjudicated.'* See In re Smith's Estate, 60 Mont. 276, 199 P. 696, and Brennan v. Jones,, 101 Mont. 550, 55 P.2d 697, 700.

"In Anderson v. Border, 87 Mont. 4, at page 8, 285 P. 174,

176, Chief Justice Callaway, speaking for this court said: '.The greater portion of appellant's exhaustive brief is devoted to an attempt to demonstrate that our former opinion in this case is erroneous but *the short answer is that as to all points which were directly involved in, and were passed upon, in the former appeal, and which are involved in this case, whether the opinion is right or wrong, it is the law of the case, was binding upon the trial court, and is binding upon us.*' See also: Apple v. Edwards, 123 Mont. 135, 139, 211 P. 2d 138; Ivins v. Hardy, 123 Mont. 513, 516, 217 P.2d 204; Lake v. Emigh, 121 Mont. 87, 91, 190 P.2d 550; Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 281 P. 913, 914; Neary v. Northern Pac. Ry. Co., 41 Mont. 480, 110 P. 226, 235; Finlen v. Heinze, 32 Mont. 354, 366, 80 P. 918." Emphasis supplied.

*Cause No. 16386 Closed.* For more than two years from and after April 27, 1942, the date whereon the appellant Sanborn served and filed his memorandum of costs, no other document, paper or writing was filed in district court cause No. 16386, nor, during such period, was anything done by the respondents Johnstone to comply with the Supreme Court's decision, final judgment and mandate that had been filed and entered in cause No. 16386 on April 17, 1942.

The respondents Johnstone failed, omitted and refused to accept or take down the $1,213.41 deposit that had been made on November 1, 1937, by the appellant Sanborn at the insistence and demand of the respondents and which the Supreme Court had "ordered to be paid to the respondent." See 113 Mont. at page 23, 120 P. 2d at page 577.

The respondents Johnstone likewise failed and omitted to pay the appellant Sanborn the latter's costs of $211.42 or any part thereof being the sum expended by Sanborn in the taking and successful prosecution in the Supreme Court of his appeal No. 8082.

No affidavit, claim, petition, motion, pleading, document, paper or writing was filed and nothing whatever was done in

district court cause No. 16386 by either the appellant Sanborn or the respondents Johnstone from and after April 27, 1942, to and including May 24, 1944, during which period of time cause No. 16386 remained dormant. To all intents and purposes the jurisdiction of the district court had been exhausted and the litigation had terminated.

In Phillips v. Patterson, 34 Cal.App.2d 481, 484-487, 93 P.2d 807, 810, it is said:

"* * * The entry of judgment in the exact form directed by the Appellate Court exhausted the jurisdiction of the trial court. That constituted a termination of the litigation. * * * The final judgment of an appellate court may be just as conclusive of the issues determined by it as that of a trial court. * * *

"Our courts have frequently held that the entry of a modified judgment as directed by the Superior Court or the District Court of Appeal is final, and exhausts the jurisdiction of the trial court. [Citing numerous cases.] * * *

"The judgment of the Appellate Court is as binding on the respondent as it is upon the appellant."

*Order Reopening Case.* On May 25, 1944, being more than two years after the Supreme Court's opinion, judgment and remittitur had been filed and entered in district court cause No. 16386, and long after such opinion and decision had been published in Volume 120 of the Pacific Reporter, Second Series, and in Volume 113 of the Official Montana Reports, and without any notice to Sanborn or his counsel and without the filing in district court cause No. 16386 of any amended or supplemental supporting affidavit, petition, motion or pleading, District Judge A. J. Horsky made, signed and caused to be filed in district court cause No. 16386, an *ex parte* order, purporting to reopen and retry the case on claimed additional facts, all purporting to have arisen *"subsequent to the original hearing to determine the deposit and during the pendency of this action,"* being long subsequent to the 19th day of April 1937,

whereon the original hearing on Johnstone's affidavit to determine the deposit was held, as well as long subsequent to the 17th day of April 1942, the date whereon the Supreme Court's opinion, *final judgment* and remittitur were filed and entered in the District Court in Cause No. 16386.

Among other recitals set forth in Judge Horsky's above order of May 25, 1944, it is stated and ordered as follows, viz.:

"Thereafter * * * an appeal was taken by the plaintiff [Sanborn] from the adverse judgment to the Supreme Court of Montana and the Supreme Court in a decision dated January 3, 1942, reversed the judgment of this Court and ordered all the deposit made by the defendant [sic] at the commencement of the action paid to the respondent, Alexander B. Johnstone.

"That said deposit as determined by this court on the 11th day of September, 1937, and as affirmed by the Supreme Court, consisted of the following sums: $392.00 — payments made by defendant, Alexander B. Johnstone to the County of Lewis and Clark on the purchase contract, $109.55 — taxes accruing upon the land following the purchase of said land by Johnstone from Lewis and Clark County, $711.86 — an amount reasonably paid and expended by the defendant, Alexander B. Johnstone in preserving said property and making improvements thereon. Total deposit $1,213.41.

"That *subsequent to the original hearing to determine the deposit and during the pendency of this action additional taxes, penalties and interest have accrued against said land,* amounting to the sum of $858.65 as shown by the records of the County Treasurer of Lewis and Clark County, Montana, and additional payments, together with interest, have been made on the purchase price under the contract of February 26, 1936, between Alexander B. Johnstone and Lewis and Clark County in the amount of $1,182.64. That the total sum of accrued taxes and the contract payments since the original deposit was made by the plaintiff amounts to $2,041.29.

"Now Therefore, *on application* of attorneys for Alexander B. Johnstone and pursuant to section 2214 of the Revised Codes of Montana, 1935 * * *.

"It Is Hereby Ordered that the plaintiff, Bruce W. Sanborn, deposit with the Clerk of this Court by June 20, 1944, the sum of $2,041.29, said sum being the total of all taxes and contract payments accruing during the pendency of this action, and *it is further ordered that if said plaintiff shall refuse and does not deposit said sum with the Clerk of the Court by June 20, 1944, this Court will enter judgment in accordance with the above-mentioned section, quieting title in the defendant, Alexander B. Johnstone and against the plaintiff* and will thereupon order the return of the present and existing deposit of $1,213.41 to be paid by the Clerk of the Court to said plaintiff, provided further that if said plaintiff deposits the sum of $2,041.29 with the Clerk of the Court by June 20, 1944, then this Court will enter a judgment quieting title in the plaintiff, Bruce W. Sanborn and will order the original deposit of $1,-213.41 plus the current deposit of $2,041.29 making a total of $3,254.70 to be paid to the defendant, Alexander B. Johnstone, as provided by Section 2214.

"It Is Further Ordered that the Clerk of the Court mail forthwith a copy of this order to plaintiff's attorney, Charles Davidson, at Great Falls, Montana. (First National Bank Building)

"Done this 25th day of May, 1944. (Emphasis supplied.)

"A. J. Horsky

"District Judge"

*Motion to Vacate Judge Horsky's Order.* On June 8, 1944, Bruce W. Sanborn, plaintiff in district court cause No. 16386, served and filed a timely written motion to vacate and set aside District Judge A. J. Horsky's above order of May 25, 1944, upon the grounds that such order:

1. Was made without notice to plaintiff Sanborn;

2.   Was made without any opportunity on the part of plaintiff Sanborn to be heard;

3.   Requires plaintiff Sanborn to make a further deposit in the district court for the benefit of defendant, Alexander B. Johnstone, but makes no allowance to the plaintiff Sanborn for the reasonable rental of the lands and premises involved during the pendency of the action and particularly for the rental since the decision and judgment of the Supreme Court pronounced on the 3rd of January 1942. Thereafter Sanborn served and filed an amended motion to vacate and set aside Judge Horsky's order of May 25, 1944, wherein, in addition to the above-enumerated grounds, Sanborn urged that the order was and is in excess of the District Court's jurisdiction and that such order was made without jurisdiction.

On June 15, 1944, the plaintiff, Bruce W. Sanborn, filed a duly verified petition in cause No. 16386 wherein he challenged Judge Horsky's order of May 25, 1944, as being null and void, and wherein he sought to have a day certain set for hearing his petition and for other relief to recover the reasonable rental for the leased lands and premises, and the further sum of $211.42 for Sanborn's costs incurred in the prosecution of his appeal No. 8082 in the Supreme Court wherein he had prevailed, and that said sums be offset as a credit upon the $1,-214.41 deposited by Sanborn in November 1937 in compliance with Judge Horsky's order of March 6, 1937, as provided for in section 2214, Rev.Codes of Montana of 1935.

*Void Order.* Judge Horsky's above order of May 25, 1944, was made without and in excess of jurisdiction. It conflicts with and is contrary to the Supreme Court's opinion and final judgment and remittitur filed and entered in the District Court on April 17, 1942. Such order is invalid, void and of no effect whatever.

A decision of the Supreme Court on an appeal becomes and is the law of the case on all subsequent proceedings, whether such decision be right or wrong. Apple v. Edwards, 123 Mont.

135, 139, 211 P.2d 138; Ivins v. Hardy, 123 Mont. 513, 516, 217 P.2d 204; Lake v. Emigh, 121 Mont. 87, 91, 190 P.2d 550.

In Snoffer v. City of Los Angeles, 14 Cal.App.2d 650, at page 653, 58 P.2d 961, at page 962, it is said:

"When a cause is remanded, as in this case, not for retrial, but to give effect to the decision on appeal, the trial court can take no further proceedings except such as are necessary to give effect to the judgment of the appellate court. Soule v. Dawes, 14 Cal. 247; 2 Cal.Jur. 1052. When a cause is remanded with directions to enter a particular judgment, it is the duty of the trial court to enter judgment in conformity with the order of the appellate court, and that order is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void."

In Carter v. Superior Court, 96 Cal.App.2d 388, at page 391, 215 P.2d 491, at page 493, it is said:

"In the early case of Keller v. Lewis, 56 Cal. 466, it was held that upon a judgment of reversal by the Supreme Court with directions to the court below to render a decree in accordance with the views therein expressed the court below had but to follow the direction thus given and that *the trial court properly refused to allow new issues to be framed by supplemental pleadings. The courts have repeatedly adhered strictly to the rule. * * * Any proceedings had or judgment rendered contrary to such specific directions would be void.* [Citing cases.]" Emphasis supplied.

In Buttram v. Finley, 73 Cal.App.2d 536, at pages 540, 541, 543, 166 P.2d 654, at pages 656, 657, it is said:

"Based upon that amended decree the trial court again rendered judgment for the defendants contrary to the decision

of this court, to the effect that plaintiffs have no title to the land in question.

"The appellants contend that the trial court was not authorized to disregard the mandate of this court by admitting evidence of the decree as amended nunc pro tunc, after the lapse of more than sixty years, and to render judgment for the defendants based thereon, with respect to the title to the real property, contrary to the explicit direction of this court on the former appeal, since the amendment raises a new issue which was not considered by the trial court or by this court at the first hearing or on appeal therefrom; that the decision of this court became the law of the case and is absolutely controlling with respect to the title to the land. * * *

"We are of the opinion the trial court erred in failing to conform to the specific directions of the Appellate Court to render judgment in favor of the plaintiffs, quieting title in them, and in again rendering a judgment against plaintiffs based on new facts and a new issue which were neither presented nor considered on the former trial or appeal. * * * The issue raised by that fact was not involved or considered on the former trial. It therefore did not come within the asserted exception to the general rule that the mandate of the reviewing court is binding on the trial court and must be strictly followed. 3 Am.Jur. 730, § 1234.

"Where a reviewing court reverses a judgment with directions to render a contrary judgment and to determine a specified issue only, such as the amount of damages to be awarded, or to ascertain the several interests of the respective parties, the trial court is bound by the directions given and has no authority to retry any other issue, or to admit new evidence in conflict with the judgment of the reviewing court, or to enter a contrary judgment. The directed judgment of the reviewing court becomes the law of the case, and it is absolutely controlling on the jurisdiction of the trial court. Rice v. Schmid, 25 Cal.2d 259, 153 P.2d 313; Soule v. Dawes, 14 Cal. 247; Lial v.

Superior Court, 133 Cal.App. 31, 23 P.2d 795; Snoffer v. City of Los Angeles, 14 Cal.App.2d 650, 58 P.2d 961; 2 Cal.Jur. pp. 1051-1054, §§ 625-627; 3 Am.Jur. 730, § 1234. * * *

"We conclude that the last judgment of the trial court in this case is in conflict with the mandate of this court on the issue of title to the property, and that it is therefore erroneous and ineffectual."

In Phillips v. Patterson, 34 Cal.App.2d 481, at pages 485-487, 93 P.2d 807, at pages 810-811, it is said:

"* * * In 2 Freeman on Judgments, 5th ed., 1345, § 639, it is said in that regard:

" 'The judgments of appellate courts are as conclusive as those of any other court. They not only establish the facts, but also settle the law, so that the law as decided upon any appeal must be applied in all the subsequent stages of the cause, and they are *res adjudicata* in other cases as to every matter adjudicated.' * * *

" 'When a cause is remanded, as in this case, not for retrial, but to give effect to the decision on appeal, the trial court can take no further proceedings except such as are necessary to give effect to the judgment of the appellate court. Soule v. Dawes, 14 Cal. 247; 2 Cal.Jur. 1052. When a cause is remanded with directions to enter a particular judgment, it is the duty of the trial court to enter judgment in conformity with the order of the appellate court, and that order is decisive of the character of the judgment to which the appellant is entitled. *The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void.*' "

In 3 Am.Jur., Appeal and Error, § 1234, pp. 730, 731, it is said:

"After a case has been determined by the reviewing court and remanded to the trial court, the duty of the latter is to comply with the mandate of the former. * * * Public interest

requires that litigation shall come to an end speedily, so that when a cause has been tried to judgment, and the merits of the trial determined upon appeal, the trial court, upon remittitur, has no power but to obey the judgment of the appellate court. * * * *Proceedings contrary to the mandate must be treated as null and void.*" Emphasis supplied.

Again in 3 Am.Jur., Appeal and Error, § 1236 at pp. 732, 733: `

"The lower court, upon remand of a case from a higher court, must obey the mandate or remittitur; * * * it has no authority to enter any judgment not in conformity with the order, or any judgment other than that directed or permitted by the reviewing court. Otherwise, litigation would never be ended, and the supreme tribunal of the state would be shorn of authority over inferior tribunals. * * * When the merits of a case are determined on appeal, the trial court has no power but to obey the judgment of the appellate court. * * * Nor can new defenses existing at the date of the decree or judgment be heard in opposition."

In 3 Am.Jur., Appeal and Error, § 1237 at pp. 733 and 734, it is said:

"After the reviewing court has determined a case before it and remanded such case to the lower court, the latter is without power to modify, alter, amend, set aside, or in any manner disturb or depart from the judgment of the reviewing court * * *. *The judgment of the higher court is not reviewable in any way by the court below, in the exercise of its equitable powers, or otherwise.* The lower court cannot vary or examine the decree of the higher court for any other purpose than execution; give any other or further relief; review it, even for apparent error, upon any matter decided on appeal. * * *

"If the lower courts were authorized to disobey the mandate, litigation would never be ended and the supreme tribunal of the state would be shorn of that authority over the inferior tribunal with which it is invested. But the rule has long pre-

vailed that there must be an end to the litigation of a particular cause, and that an alleged injured litigant, in order to establish what he may deem the justice of the cause, may not have, de novo, trial after trial, ad infinitum. * * *'' Emphasis supplied.

Again in 3 Am.Jur., Appeal and Error, § 1238 at pp. 734 and 735:

''When the reviewing court *reverses a judgment of the lower court* and remands the case with specific directions as to the judgment or decree to be entered, *the lower court must discharge its duty by obeying the mandate of the higher court, notwithstanding a change of circumstances or conditions.* Relief from changed conditions or rights accruing pending the appeal on which the entry of a specific judgment is ordered can be had only by resort to some sort of original proceeding by which appropriate relief may be secured. It cannot be by way of defense to the judgment directed, for when a particular judgment is directed by the appellate court, the lower court is not acting of its own motion, but in obedience to the order of its superior. *What the superior says it shall do, it must do, and that alone.* Public interests require that an end shall be put to litigation; and when a given cause has received the consideration of a reviewing court, has had its merits determined, and has been remanded with specific directions, the court to which such mandate is directed has no power to do anything but obey. *Nor may new defenses existing and known at the date of the decree so reversed be entertained or heard in opposition.*'' Emphasis supplied.

*Judge Horsky's Jurisdiction.*

Judge Horsky, as presiding judge in Department No. 1 of the District Court for Lewis and Clark County, acquired jurisdiction in Sanborn's quiet title action No. 16386 on December 26, 1936, upon its commencement in his department and he retained such jurisdiction for a period of three years and two months thereafter, being until February 21, 1940, on which

date Sanborn served and filed his notice of appeal from Judge Horsky's adverse judgment in the cause.

The service and filing of such notice of appeal *divested* Judge Horsky of his jurisdiction in the action, and such acts *invested* the Supreme Court with jurisdiction and there jurisdiction remained from February 21, 1940, to and including April 17, 1942, the date whereon the Supreme Court's remittitur, opinion, and final judgment were received, filed, and entered in the District Court in Cause No. 16386.

The appellate court's remittitur, opinion, and final judgment reversed and nullified, *in toto,* Judge Horsky's judgment of August 25, 1939, and fully and *finally* determined the rights of all the parties by finding and adjudging that the respondents, Alexander B. Johnstone and his wife, had failed to show any defense to Sanborn's quiet title suit or to establish any valid claim or title to the described real property. However, the Supreme Court approved of Judge Horsky's order requiring the plaintiff-appellant Sanborn to deposit $1,213.41 with the Clerk of the District Court to the use of the respondents Johnstone and, in its final judgment, the Supreme Court ordered that all of such deposit "be paid to the respondents".

The three justices of the Supreme Court, concurring in the majority opinion, declined to send cause No. 16386 back to the District Court for a new trial, or for the purpose of amending the pleadings or for any further judicial action of any sort or character to be done or performed by the reversed trial judge. Thus, did the majority opinion deny to the trial judge the right to exercise any other or further jurisdiction in the cause which fact was fully appreciated by the justices then comprising the Supreme Court, as is shown by Mr. Justice Angstman's dissent, concerning the disposition of the cause wherein he wrote, "* * * what we should do with it is to send it back for a new trial." See 113 Mont. at page 23, 120 P.2d at page 577.

For more than two years after the filing and entering in the

District Court, on April 17, 1942, of the Supreme Court's final judgment in cause No. 16386 Judge Horsky made no attempt whatever to exercise any jurisdiction in cause No. 16386, but thereafter, on May 25, 1944, without the filing, in the District Court, of any moving papers whatever, Judge Horsky made and issued his *ex parte* order of May 25, 1944, wherein he assumed to change, alter and reverse the appellate court's final judgment. In so doing, the trial judge acted without and in excess of jurisdiction for which reasons his *ex parte* order was and is void.

*The final judgment* in district court cause No. 16386 was, is, and must continue to be in the exact words pronounced by the Supreme Court on January 3, 1942, as is accurately reported and published in Sanborn v. Lewis and Clark County, et al., 113 Mont. at pages 4-23, and 120 P.2d at pages 569-577.

Right or wrong, upon the handing down of the Supreme Court's remittitur such judgment became and must forever continue as the law of district court cause No. 16386 and no subsequent order of the District Court and no subsequent writ, order or judgment of the Supreme Court can either alter, change, amend, reverse or nullify such final judgment nor remove it from the above-designated official reports of such decision and judgment.

With the Supreme Court's *final judgment* so pronounced, filed, entered and published, the district judge had no right, power, authority or jurisdiction to tamper or intermeddle in any wise or manner or at any time.

Judge Horsky's order of May 25, 1944, is void.

*Void Things.* "Void things are as no things." State v. Evans, 15 Mont. 539, 542, 39 P. 850, 851, 28 L.R.A. 127.

"A void transfer is, in effect, no transfer. A void deed is, in effect, no deed. Such a deed is a nullity *ab initio.*" Forrester & MacGuinniss v. Boston & Montana Consol. etc., Mining Co., 29 Mont. 397, 401, 74 P. 1088, 1090, 76 P. 211.

"A 'void thing' is no thing; it has no legal effect whatsoever

and no right whatever can be obtained under it or grow out of it. In law it is the same thing as if the 'void thing' had never existed.'' Lowery v. Garfield County, 122 Mont. 571, 584, 208 P.2d 478, 485.

*What to Do.* What can be done about a void thing?

Several courses are open, among them being the following:

First, no attention or heed whatever need be given to the void thing. It may be ignored. It may be wholly disregarded.

Second, the void thing may be vacated and set aside on motion or petition.

Third, the void thing is always open to attack, either direct or collateral.

Fourth, the void thing ''may be lopped off at any time.''

A lapse of time is never a bar to such challenges or attacks or relief.

In Lowery v. Garfield County, supra, this court, quoting with approval from the Oklahoma case of Lind v. Stubblefield, 138 Okl. 280, 282 P. 365, 367, said: ''When a proceeding is void for one purpose, it is void for all purposes. A void tax deed is like a void judgment, which * * * is but 'a dead limb upon the judicial tree, which may be lopped off at any time.' *The deed being void it did not give the defendants or either of them constructive possession or the right of actual possession.''* Emphasis supplied.

State ex rel. Johnson v. District Court, etc., for Jefferson County et al., 130 Mont. 103, 295 P.2d 1042, 1044, was an original proceeding for a writ of review filed in the Supreme Court wherein was challenged the procedure taken in the respondent District Court in an action to set aside a tax deed brought by Jalmir Mining Company, plaintiff v. David S. Johnson, defendant, wherein the defendant Johnson filed an affidavit invoking the provisions of R.C.M. 1947, § 84-4158, (formerly Section 2214, R.C.M. 1935), to invest the District Court, Judge McClernan, presiding, with jurisdiction to issue an order, made July 14, 1952, requiring the plaintiff, Jalmir

Mining Company, to deposit with the clerk of the trial court, within ten days, the sum of $350 to guarantee payment of the taxes, interest and penalty and also *requiring that the plaintiff deposit a surety bond of $6,836 to guarantee payment of the sums reasonably expended in improving the property.*

As to the trial court's authority and jurisdiction under the statute, R.C.M. 1947, § 84-4158, to require the deposit of the surety bond, the Supreme Court, speaking through Mr. Justice Angstman said:

"* * * The statute does not authorize any such procedure. The court was without jurisdiction to order the furnishing of a bond. The court's duty was to make determination of the amount necessary for plaintiff to deposit in court, and then fix the time for its payment. The order of Judge McClernan of July 14, 1952, was void for want of jurisdiction. *The order, being void on its face for want of jurisdiction, was subject to collateral attack.* Coburn v. Coburn, 89 Mont. 386, 298 P. 349; In re Fort Shaw Irr. Dist., 81 Mont. 170, 261 P. 962; Frisbee v. Coburn, 101 Mont. 58, 52 P.2d 882. *It was not necessary to appeal from the order* or to have settled a bill of exceptions as contended by relator, *where, as here, the infirmity of the order appears on its face. It was in the same category as a void statute* which this court, in Hamilton v. Board of County Com'rs, 54 Mont. 301, 169 P. 729, 731, described as follows: 'An unconstitutional statute is void, and a void thing is as nothing. A void statute is not a law. It imposes no duty, confers no authority, affords no protection, and no one is bound to observe it. In contemplation of law it is as inoperative as though it had never been passed.'

"Or as stated in Evans v. Oregon Short Line R. Co., 51 Mont. 107, 149 P. 715, 717. 'The infirmity appearing upon its face, its validity can be assailed on appeal or by motion to set it aside, in the court which rendered it, or by objection to it when an effort is made to use it as evidence in any other proceeding to establish a right.'

"If we assume that Judge Duncan had authority to amend an order made by Judge McClernan, we still could not sustain the order made by him because it too proceeded contrary to the statute. The only kind of an order that the statute permits is one making determination of the amount necessary for plaintiff to deposit in court and to fix the time within which the deposit shall be made. *It follows that the order* of July 14, 1952, purporting to require the furnishing of a bond within a stated time *is void for want of jurisdiction, and the order attempting to amend it is likewise void.*" Emphasis supplied.

*Judge Horsky Retires.* On January 5, 1953, Judge Horsky's term of office expired and he retired from the district court without having ruled upon Sanborn's motion of June 8, 1944, to vacate and set aside Judge Horsky's void *ex parte* order of May 25, 1944, and without having ruled upon Sanborn's petition of June 15, 1944, challenging the jurisdiction and authority of Judge Horsky to either make or enforce such void *ex parte* order.

Upon such retirement, District Judge George W. Padbury, Jr., succeeded Judge Horsky as the presiding judge in Department No. 1 of the District Court. On February 5, 1955, Judge Padbury set for hearing on February 17, 1955, Sanborn's motion to vacate and set aside, and also Sanborn's petition challenging Judge Horsky's jurisdiction and authority to make his *ex parte* order of May 25, 1944.

On February 11, 1955, counsel for the defendant Johnstones swore to and filed in cause No. 16386 an affidavit disqualifying Judge Padbury for imputed bias thereby defeating and preventing the holding of the hearing on Sanborn's motion and petition so set for February 17, 1955.

*Johnstone Sues Sanborn.* On March 8, 1955, the *tenant*, Alexander B. Johnstone, commenced in the District Court for Lewis and Clark County a *new quiet title suit* No. 24875, against his *landlord*, Bruce W. Sanborn, wherein Johnstone in the *same* kind of action *again* sought to have the *same* District

Court quiet his claimed title to the *same* 1,120 acres of land involved in quiet title suit No. 16386, commenced more than eighteen years before and wherein all the claims and rights of both Johnstone and Sanborn were fully and finally determined and adjudged by the remittitur, opinion and final judgment of the Supreme Court of Montana, duly filed and entered on April 17, 1942, in the District Court in Sanborn's quiet title suit No. 16386, being more than a dozen years before Johnstone's *new* quiet title suit, No. 24875, was commenced. Sanborn appeared in cause No. 24875 by general demurrer and thereafter filed therein his answer and cross complaint. This *new* quiet title suit No. 24875, by the *tenant* Johnstone against his *landlord* Sanborn will be more fully considered later in this dissent.

The Honorable Victor H. Fall succeeded Judge Padbury as district judge presiding in Department No. 1 of the District Court, and thereafter at the special instance and request of the plaintiff Sanborn, Judge Fall set for hearing for January 11, 1957, Sanborn's aforesaid motion and petition challenging Judge Horsky's jurisdiction to make his *ex parte* order of May 25, 1955, and also set for hearing the various other motions, petitions and papers that had been filed in cause No. 16386 subsequent to the making of Judge Horsky's aforesaid *ex parte* order. Since the order showed upon its face that it was *void* it required neither motion nor petition nor proceedings of any sort to challenge its validity. Being void it never existed. It could not be affected by any failure to prosecute the motion and petition filed. The void order should have been wholly ignored and disregarded. It may be vacated at any time.

*Judge Fall Rules.* On January 11, 1957, the motions, petitions and matters so set, were heard before District Judge Fall, with counsel representing Sanborn and counsel representing the Johnstones present and participating. At the conclusion of such hearing, and on the date thereof (January 11, 1957), Judge Fall ruled upon all the proceedings and matters

there submitted by his minute entry order of that date which recites:

"This cause came on for hearing this day, Counsel stipulated that Honorable Victor H. Fall, Judge, preside. The defendant's counsel, on oral motion, moved the court to dismiss cause and strike petition for rentals on grounds stated in written motion on file herein. The defendant's motion to strike petition for rentals will be sustained and plaintiffs allowed 20 days to prepare and file amended petition. The Plaintiff's motion to vacate and set aside Order of Judge Horsky, filed May 25, 1944, was granted by the court. The Defendant's Motion to Dismiss was denied, without prejudice to defendants making and filing a new motion to dismiss. Defendants present by counsel, Small and Herron, and the plaintiff present by counsel, Ralph J. Anderson, Stanley P. Sorenson and Charles Davidson."

*Correct Rulings.* Judge Fall, on January 11, 1957, properly denied the defendant Johnstone's oral motion for an order dismissing Sanborn's quiet title action No. 16386 wherein the Supreme Court's final judgment had been duly and regularly filed and entered almost fifteen years before.

The filing and entering of such final judgment on April 17, 1942, had terminated the action and had determined the rights of the plaintiff, Bruce W. Sanborn as well as the rights of the defendants, Lewis and Clark County, Alexander B. Johnstone and Mrs. Alexander B. Johnstone, in and to the property involved. The Supreme Court's final judgment so filed and entered was and "is the final determination of the rights of the parties" in said action. R.C.M. 1947, § 93-4701.

Judge Fall's ruling granting the plaintiff Sanborn's motion to vacate and set aside Judge Horsky's void *ex parte* order of May 25, 1944, was also correct. Such void order was made more than two years after the filing and entering of the Supreme Court's valid final judgment in cause No. 16386 and it was made without notice, without the filing of any supporting

or moving affidavit, or pleading or other writing and without and in excess of jurisdiction.

Without and until the filing of the statutory *affidavit* therefor as provided for in Section 2214, R.C.M. 1935 (now R.C.M. 1947, § 84-4158), the court was wholly without jurisdiction to make the order or orders provided for in the statute (Section 2214, R.C.M. 1935, now R.C.M. 1947, § 84-4158). Absence of affidavit spells absence of jurisdiction.

Even though an affidavit had been filed, Judge Horsky would still have been without jurisdiction to make his order of May 25, 1944, attempting to add to, change, alter, modify, disregard, reverse and, annul the Supreme Court's remittitur, opinion and final judgment so filed and entered in the District Court in cause No. 16386, more than two years before.

In Casey v. Barker, 219 N.C. 465, 467, 14 S.E.2d 429, 431, the court said:

"A void judgment may be treated as a nullity, *disregarded,* vacated on motion, attacked directly or collaterally. Dunn v. Wilson, 210 N.C. 493, 187 S.E. 802; Oliver v. Hood, 209 N.C. 291, 183 S.E. 657; Abernethy v. Burns, 210 N.C. 636, 188 S.E. 97." Also see In re Steele, 220 N.C. 685, 18 S.E.2d 132, 135.

Thompson v. Thompson, Tex.Civ.App. 1951, 238 S.W.2d 218, 220, holds that a void judgment, "in so far as it purports to be the pronouncement of a court, is not only invalid but is an absolute nullity and is in contemplation of law no judgment at all."

In Hill v. Walker, 297 Ky. 257, 180 S.W.2d 93, 95, 154 A.L.R. 814, 818, court said: "A void judgment is no judgment at all, and no rights are acquired by virtue of its entry of record. A court may, in a proper proceeding, *vacate it at any time. The lapse of time is no bar to such relief."* Emphasis supplied.

On February 15, 1957, counsel for the plaintiff Johnstone filed in his cause No. 24875, a lengthy motion directed against Sanborn's answer and cross complaint, which counsel desig-

nated as "Consolidated Motion to Strike and Motion to Make More Definite and Certain."

*Disqualification of Judge Fall.*

On the following day, February 16, 1957, the plaintiff Johnstone's counsel, filed in cause No. 24875 an affidavit of disqualification against District Judge Victor H. Fall whereupon, and on the same day, Judge Fall ordered the cause transferred from Department No. 1 wherein he then presided, to Department No. 2 of the District Court and called in District Judge Lester H. Loble, then the presiding judge in the latter department, to assume jurisdiction in the cause.

By the mere *filing* in cause No. 24875, of the above affidavit of disqualification against District Judge Fall, the plaintiff Johnstone's counsel divested such disqualified judge of *all* authority and jurisdiction "to act further in the action." R.C.M. 1947, § 93-901, subd. 4.

Nothing further was done by the plaintiff Johnstone in the prosecution of his quiet title suit No. 24875, from February 16, 1957, until November 20, 1958, whereon Johnstone filed his reply and answer to Sanborn's answer and cross complaint in cause No. 24875.

*Original Proceeding No. 9792.* In the meantime, on March 2, 1957, being but two weeks after the filing of his disqualifying affidavit against Judge Fall in district court causes No. 16386 and No. 24875, Alexander B. Johnstone commenced, in the Supreme Court of Montana, his original proceeding No. 9792 seeking the issuance of a writ, which proceeding is entitled:

State of Montana, ex rel. Alexander B. Johnstone, Relator v. The District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark, the Honorable Victor H. Fall, once presiding Judge, and the Honorable Lester H. Loble, now presiding Judge, Respondents", by filing in this court a petition duly verified by the relator Johnstone on February 28, 1957.

Bruce W. Sanborn, the plaintiff in cause No. 16386, and

true owner of the property involved was not made a party to this original proceeding for the issuance of a writ.

The petition for a writ consists of sixteen separately numbered paragraphs and a prayer for relief.

The allegations of the petition indicate that by means of the writs, which the relator Johnstone sought to have the Supreme Court issue, he was attempting to quiet title in himself to the *same* described 1,120 acres of ranch property wherein the Supreme Court, in its remittitur, opinion and final judgment entered on April 17, 1942, in district court cause No. 16386, declared, adjudged and established *the law of the case,* for all time, by determining that the three defendants named therein, namely, Lewis and Clark County, Alexander B. Johnstone and Mrs. Alexander B. Johnstone, had shown no defense whatever to Sanborn's suit No. 16386 to quiet his title and that the defendants, including Alexander B. Johnstone, had no valid claim or title to Sanborn's described ranch property.

In the first paragraph of his petition for a writ, the relator, Alexander B. Johnstone, alleged, *inter alia:*

That during the years 1930 to 1935, Bruce W. Sanborn was the owner of the 1,120 acre ranch property; that during the years 1930 to 1935, Sanborn failed to pay the taxes on the property; that on December 31, 1935, the County of Lewis and Clerk took a tax deed to the property by virtue whereof "the title to said property * * * was * * * conveyed unto Lewis and Clark County"; that on February 26, 1936, the relator Johnstone entered into a contract with Lewis and Clark County to purchase the property and "did then and there enter into * * * possession of said * * * described property * * * and ever since * * * the record title to said premises has been in * * * petitioner, Alexander B. Johnstone, according to the records of Lewis and Clark County * * * and petitioner [Johnstone] has paid all taxes levied * * * against" the property from February 26, 1936, to February 28, 1957, the date whereon the petitioner Johnstone verified his petition; that on May 11,

1940, during the pendency of Sanborn's quiet title suit No. 16386 against Lewis and Clark County, Alexander B. Johnstone and his wife, the relator Johnstone completed payment of the full purchase price specified in the contract, whereupon Lewis and Clark County delivered to Johnstone a deed "conveying to him full and absolute title to the described property" and that ever since he has been the legal owner thereof and in open, notorious, sole, and exclusive possession thereof and has paid all state, county and local taxes levied or assessed against said real property.

In the sixteenth paragraph of his petition the relator Johnstone alleged, *inter alia:* That he *"had no remedy by way of appeal,* and is without adequate remedy for relief, and without adequate remedy to prevent further proceedings in the said cause, [No. 16386] except by Writ of Review annulling all of the aforementioned orders entered by the respondent * * * on January 11, 1957, * * * or by Writ of Prohibition, prohibiting * * * further proceeding, *except to enter or reinstate judgment quieting title in the defendant, Alexander B. Johnstone,* * * * *or except to enter judgment dismissing the said cause No. 16386, and to enter an order striking any petition for rentals* * * * *made or pending on behalf of the plaintiff, Bruce W. Sanborn, in said cause; or by Writ of Supervisory Control directing the* * * * *District Court* * * * *how to proceed in the said cause."* Emphasis supplied.

In Woodward v. Perkins, 119 Mont. 11, 21, 171 P.2d 997, 1001, it is said:

"The general rule is that no appeal lies from a judgment entered in an inferior court pursuant to and in substantial compliance with the mandate of the appellate court."

*Prayer.* The prayer to Johnstone's petition reads:

"Wherefore, petitioner prays this Honorable Court that a Writ of Review be issued to annul the aforesaid order of January 11, 1957, or a Writ of Prohibition be issued to prohibit the respondent lower court from further proceeding with the

aforesaid cause No. 16386, *except to enter judgment quieting title in favor of this relator and petitioner, Alexander B. Johnstone, or except to enter judgment dismissing the said cause No. 16386;* or that this court issue its Writ of Supervisory Control directing the respondent lower court how to proceed, and that an order to show cause be issued requiring respondents to show cause before this court at a time certain why such Writ of Supervisory Control or Writ of Review or Writ of Prohibition or other appropriate writ should not be issued, and for such further order, or relief, as to this Honorable Court shall appear proper in the premises.''

The Supreme Court's final judgment had been filed and entered in cause No. 16386 since April 17, 1942, and this terminated and ended the prosecution of the action and closed the case. No further proceedings were to be had. Judge Horsky's *void* order of May 25, 1944, should have been completely ignored and disregarded. It was not necessary to directly challenge such *void* order by either motion or petition, nor was there any necessity for ever calling up for hearing or for hearing or determining either Sanborn's motion or his petition to vacate Judge Horsky's *void* order.

On December 10, 1957, three of the justices of the Supreme Court of Montana, as it was then constituted, made, signed and caused to be filed in original proceeding No. 9792, an order commanding the respondent District Court for Lewis and Clark County and the respondent, District Judge Lester H. Loble, then presiding in department No. 2 of the trial court, to enter in Sanborn's quiet title action No. 16386, wherein the Supreme Court's final judgment had been duly filed and entered more than fifteen years before, an entirely new and different judgment dismissing Sanborn's quiet title action No. 16386 *"for want of diligent prosecution"* despite the fact that the Supreme Court's *final* judgment by Associate Justice Albert Anderson and concurred in by Chief Justice Howard A. Johnson and Associate Justice Leif Erickson, had been

duly and regularly filed and entered in Sanborn's quiet title suit No. 16386, more than fifteen years before.

The order of December 10, 1957, with title of court and cause omitted, reads:

"Order Granting Peremptory Writ
of Prohibition

"Whereas, upon the verified application of the above-named relator, this Supreme Court has heretofore issued an order to show cause why an appropriate writ should not be issued to prohibit respondents from further proceedings in The District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark in cause No. 16386 therein *except to enter judgment quieting title in favor of relator, or dismissing said cause No. 16386; and*

"Whereas, pursuant to the aforesaid verified application and upon the hearing and rehearing, of said order to show cause so issued in the above-entitled matter, it appearing to this Supreme Court that the responding [sic] court should be prohibited from further proceeding with Cause No. 16386, *other than to dismiss the same for want of diligent prosecution;*

"It Is Hereby Ordered that a peremptory writ of prohibition in due form of law be issued out of and under the seal of this Supreme Court, addressed to the District Court of the first Judicial District of the State of Montana, in and for the County of Lewis and Clark, and to the Honorable Lester H. Loble, the now presiding Judge, and to the Honorable Victor H. Fall, once presiding Judge, commanding that the said respondents be prohibited and desist from any further proceedings in cause No. 16386, *other than to dismiss the same* as hereinafter provided; and,

"It Is Further Ordered that the said writ command that the now presiding Judge in said cause No. 16386 of the District Court of the First Judicial District of the State of Montana in and for the County of Lewis and Clark, enter judg-

ment in said cause dismissing the same for want of diligent prosecution." Emphasis supplied.

"Done this 10th day of December, 1957.

"James T. Harrison
"Chief Justice
"Wesley Castles
"Albert H. Angstman
"Associate Justices"

*Quieting Title by Writ of Prohibition.* The above order, at-. tempting to *quiet title* to real property by the issuance of a writ of prohibition in an original proceeding initiated in the Supreme Court of the State of Montana, to which proceeding the true and record owner, Bruce W. Sanborn, was never made a party, is clearly *void* in that it was made and issued without jurisdiction and in excess of jurisdiction.

*Judgment of Dismissal.* The order and the writ of prohibition, issued pursuant thereto, were promptly served upon the respondents named in original proceeding No. 9792, whereupon, the respondent, District Judge Lester H. Loble, immediately entered in Sanborn's original quiet title suit No. 16386 (where-in the Supreme Court's *final judgment* had been filed and entered since April 17, 1942), the following judgment of dismissal, viz.:

"Now Therefore, it is hereby ordered, adjudged and decreed, that the above-entitled action, the said cause No. 16386 herein, be and the same is hereby dismissed for neglect and failure to diligently prosecute the action."

"Dated this 10th day of December, 1957.

"Lester H. Loble
"District Judge"

The above judgment of dismissal so made and entered by District Judge Loble is void, as is the order of Justices Harrison, Castles and Angstman of the same date commanding the making and entering of such void judgment. Both the order

and the judgment were made and entered without jurisdiction and are in excess of jurisdiction.

The one and only valid judgment filed and entered in Sanborn's quiet title action No. 16386 is the *final judgment* of the Supreme Court of the State of Montana as filed and entered therein on April 17, 1942, pursuant to and in strict conformity with section 9753, Revised Codes Montana of 1935 (now R.C.M. 1947, § 93-8025) and with the Supreme Court's opinion and judgment as correctly reported in Sanborn v. Lewis and Clark et al., 113 Mont. 1 at pages 4 to 23, inclusive, and 120 P.2d 567, at pages 569 to 577 inclusive.

Jurisdiction was lacking in both the Supreme Court of Montana and in the justices thereof and in the District Court for Lewis and Clark County, and in the judges thereof, to thus reverse, nullify, dismiss, discard and destroy the Supreme Court's valid opinion and final judgment that had duly stood of record in both the trial court and in the appellate court for more than fifteen years.

One does not lawfully *quiet title* to real property by means of a *writ of prohibition* issued out of the Supreme Court in an original proceeding commenced in the Supreme Court and to which Bruce W. Sanborn the true and record owner of the property was never made a party.

District Judge Horsky had nothing whatever to do with the making, rendering, filing or entering of the Supreme Court's *final judgment* in Sanborn's quiet title suit No. 16386.

District Judge Horsky had no jurisdiction whatever:

(1) To entertain the *oral* application of the attorneys for Alexander B. Johnstone to make his *ex parte* order of May 25, 1944;

(2) To order Sanborn to deposit with the clerk of court, over and above the $1,213.41 deposited by Sanborn at the commencement of his quiet title suit No. 16386, the further and additional sum of $2,041.29;

(3) To order that if Sanborn shall refuse to deposit the additional sum of $2,041.29, the District Court "will enter judgment * * * quieting title in the defendant, Alexander B. Johnstone, and against the plaintiff" Sanborn;

(4) To threaten to "order the return of the present and existing deposit of $1,213.41 to be paid by the Clerk of the Court to said plaintiff" Sanborn, contrary to and in defiance of the Supreme Court's final judgment;

(5) To threaten to "enter a judgment quieting title in the plaintiff, Bruce W. Sanborn" which duty had already been performed in the Supreme Court's final judgment filed and entered more than two years previous; or,

(6) To threaten to "order the original deposit of $1,213.41 plus the current deposit of $2,041.29 making a total of $3,-254.70 to be paid to the defendant, Alexander B. Johnstone, as provided by Section 2214."

There is no provision in Section 2214 of the Revised Codes of Montana of 1935 (now R.C.M.1947, § 84-4158) that authorized or empowered District Judge Horsky to thus disobey the Supreme Court's mandate and final judgment or to attempt to modify, amend, reverse or nullify such judgment. Judge Horsky's order shows upon its face that it is void.

Sanborn gained nothing and he lost nothing by filing his motion and his petition challenging the void order, nor did he gain or lose anything by failing to sooner obtain rulings on his motion and petition. Lapse of time cannot breathe life into Judge Horsky's void order. Being void it is nothing. It may be ignored. It may be disregarded. Sanborn was under no obligation to serve and file either the motion or the petition to vacate Judge Horsky's void order nor was there any necessity for him to ever call either up for hearing. By serving the motion on the defendants Johnstone, the plaintiff Sanborn gave due notice of the infirmities in Judge Horsky's *ex parte* order which rendered it void *ab initio,* but Sanborn was not required to give such notice and at all times he was

privileged to abandon both his motion and petition without in any wise or manner affecting the void *ex parte* order which he had and has a perfect right to ignore and disregard. Such order, like the order in State ex rel. David S. Johnson v. District Court for Jefferson County, et al., supra, "being void on its face for want of jurisdiction was subject to collateral attack" at any time.

*Civil Action No. 24875.* As was observed earlier in this dissent by complaint filed March 8, 1955, in the District Court for Lewis and Clark County, the *tenant*, Alexander B. Johnstone as plaintiff, commenced district court action No. 24875 against his *landlord*, Bruce W. Sanborn, again seeking to quiet Johnstone's claimed title to the *same* 1,120 acres of land involved in Sanborn's earlier suit to quiet title No. 16386, wherein the remittitur, opinion and final judgment of the Supreme Court of Montana, denying Johnstone's claim of title, were duly filed and entered on April 17, 1942, and thus became and is the law of the case and *res judicata.*

The complaint of the plaintiff, Alexander B. Johnstone, in cause No. 24875, with formal parts omitted, reads:

"Complaint. Comes now the plaintiff [Johnstone] above-named and for cause of action against the defendant [Sanborn] complains and alleges as follows:

"I.   That the plaintiff now is, and at all times mentioned herein has been in possession of, and the owner and holder of legal title to those certain lots, pieces and parcels of land and real property situated in the County of Lewis and Clark, State of Montana, and more particularly described as follows:

"All of Section Two (2); the southeast quarter (SE¼) of Section three (3); and the northwest quarter (NW¼); the north half of the northeast quarter (N½ NE¼) and the west half of the southwest quarter (W½ SW¼) of Section eleven (11) all in Township nineteen (19) north, Range five (5) west, Montana Meridian.

"II. That the above-named defendant herein [Sanborn] claims some interest, right, title or estate, in or to said lands and premises, adverse to the plaintiff [Johnstone]; that the claims of said defendant, and each and all of them, are without any right, and are without authority of law, and are invalid, and that the same constitutes a cloud upon plaintiff's title thereto.

"Wherefore, plaintiff prays that said defendant be required to set forth the nature of his claims, and that all adverse claims of said defendant may be determined by decree of this Court, and that by said decree, it be declared and adjudged that said plaintiff is the owner and holder of said premises and all thereof; that the defendant has no estate or interest in or to, said lands and premises, or any part thereof; and also that said defendant be forever barred and enjoined from asserting any claims whatever in, or to, said land and premises, adverse to the plaintiff, and for such other and further relief as to the Court may seem just and equitable."

On May 31, 1955, the defendant, Bruce W. Sanborn, appeared in cause No. 24875 by interposing a general demurrer to the plaintiff Johnstone's above complaint. Neither party ever noticed the demurrer for hearing, however, on December 12, 1956, District Judge Victor H. Fall started matters moving by setting the defendant Sanborn's demurrer for hearing for January 3, 1957.

*Answer.* On January 25, 1957, the defendant Sanborn served and filed his answer and cross-complaint to Johnstone's complaint. Sanborn's said pleading is in three parts, as follows:

*Part I. General Denial.* In part I of his answer, in cause No. 24875, Sanborn admits that he claims an interest, right, title and estate in the described real property adverse to the plaintiff Johnstone; alleges that at all times mentioned Sanborn was and is the owner and holder of the legal title and entitled to the possession of all the described real property; al-

leges that Johnstone's claims of interest, right, title or estate in or to the described real property are invalid, without any right or authority of law, and that such claims constitute a cloud upon Sanborn's title to the described property and, except as is expressly admitted or alleged the defendant Sanborn denies every allegation of plaintiff's complaint.

*Part II. Affirmative Defense.* Next, in his answer and for an affirmative defense, Sanborn alleges: That on and prior to April 4, 1933, and at all times since, Sanborn was and now is the owner and as such owner entitled to the possession of all of the described real property.

Sanborn then pleaded the written lease entered into on or about April 4, 1933, between the *landlord owner* Sanborn and his *tenant* Johnstone; the issuance on December 31, 1935, of the *void* tax deed to Lewis and Clark County; the making of the *void* contract of purchase between the *tenant* Johnstone and Lewis and Clark County; the institution on December 26, 1936, and the subsequent prosecution by the *landlord* Sanborn of civil action No. 16386 to quiet his title against the claims of his *tenant* Johnstone; the entering on August 25, 1939, of Judge Horsky's judgment in cause No. 16386 against the *landlord* Sanborn and in favor of his *tenant* Johnstone; the *reversal* of that judgment by the Supreme Court of the State of Montana on appeal No. 8082; the filing and entering on April 17, 1942, in the District Court in cause No. 16386 of the Supreme Court's opinion, *final judgment,* and remittitur and the making and filing by District Judge A. J. Horsky, more than two years thereafter, of his *void* order of May 25, 1944, ordering that Sanborn, the true owner and *landlord,* deposit with the Clerk of the District Court by June 20, 1944, the further and additional "sum of $2,041.29 * * * being the total of all taxes and contract payments accruing during the pendency" of cause No. 16386, under the threat and penalty that if Sanborn "shall refuse and does not deposit said sum * * * by June 20, 1944" the District Court "will enter

judgment * * * quieting title in the defendant, Alexander B. Johnstone, and against the plaintiff'' Bruce W. Sanborn.

In Part II of his answer, Sanborn further pleaded: That he, Sanborn, had filed in cause No. 16386 a petition for modification of Judge Horsky's order of May 25, 1944; that thereafter Johnstone filed a motion to strike Sanborn's petition for modification; that Sanborn had filed a motion to vacate Judge Horsky's aforesaid order and that Johnstone then filed, in the district court, a motion to dismiss district court cause No. 16386 wherein the aforesaid petitions and motions were allowed to pend without being determined until January 11, 1957, on which date all were ruled upon by the District Court (Judge Fall presiding).

*Part III. Cross Complaint.* In the third part of his answer and cross-complaint, Sanborn, *inter alia,* alleged: that * * * on or about the 17th day of April 1942, remittitur from the Supreme Court of the State of Montana was filed in the above-entitled court; that despite said decision of the Supreme Court of the State of Montana and the filing of said remittitur * * * the cross-defendant, Alexander B. Johnstone, continued and still continues to occupy said lands and the whole thereof, making a home thereon for himself and family and using said lands for the raising of grain crops, grasses and hay for the raising of sheep and cattle; that since the 31st day of December, 1935, the date of the issuance of said *void* tax deed said cross-defendant, Alexander B. Johnstone, has not paid any sum whatsoever to the cross-complainant or to any other person on cross-complainant's behalf as rental for said premises. * * *

''That cross-complainant is now and has been at all times since the rendition of said decision and opinion of the Supreme Court of the State of Montana entitled to the possession of said property; that ever since said date the cross-defendant herein has wrongfully and unlawfully withheld the possession thereof from * * * cross-complainant.

"That the reasonable rental for said premises is the sum of $500.00 per year and that the value of the rents of said premises from the date of the rendition of said decision and opinion of the Supreme Court of the State of Montana is the sum of $7,365.00.

"Wherefore, this defendant and cross-complainant prays judgment against the plaintiff as follows:

"1. That the plaintiff take nothing by his complaint on file herein.

"2. The restitution of said lands and premises.

"3. The sum of $7,365.00 the value of the rents, issues and profits of said land.

"4. For his costs of suit and for such other and further relief as to the court may seem proper."

On February 15, 1957, the plaintiff Johnstone filed a lengthy motion directed against Sanborn's answer and cross-complaint. Plaintiff designated his motion "Consolidated Motion to Strike and Motion to Make More Definite and Certain."

On the following day, February 16, 1957, Johnstone's counsel filed in cause 24875, a disqualifying affidavit against District Judge Fall whereupon Judge Fall, on the same day, transferred Johnstone's new quiet title suit No. 24875 from Department No. 1 to Department No. 2 of the District Court and called in District Judge Lester H. Loble to assume jurisdiction in the cause.

Thereafter, for a period of almost two years, Johnstone suspended the prosecution of his new quiet title suit, No. 24875, being the instant action and on March 2, 1957, adopted an entirely different plan by filing direct in the Supreme Court a petition in original proceeding No. 9792 for the issuance of a writ that would prohibit further proceedings in Sanborn's quiet title suit No. 16386, which litigation had then been terminated for almost fifteen years by the entering of the Supreme Court's final judgment therein.

Notwithstanding their complete lack of authority, power or jurisdiction so to do, a *void* order was signed by three justices of the Supreme Court, on December 10, 1957, for the issuance of a peremptory writ of prohibition, prohibiting the respondent District Court and the two judges thereof "from further proceeding with cause No. 16386, other than to dismiss the same" and commanding that District Judge Loble "enter judgment in said cause dismissing the same for *want of diligent prosecution.*"

"*Want of Diligent Prosecution.*" The record in Sanborn's quiet title suit No. 16386 wholly fails to show any "*want of diligent prosecution*" on the part of the plaintiff Sanborn. The record shows these undisputed facts:

On December 26, 1936, Sanborn commenced his quiet title suit No. 16386 against (1) Lewis and Clark County, (2) Alexander B. Johnstone, and (3) Mrs. Alexander B. Johnstone.

On January 27, 1939, being but thirty-one days after commencement of his suit, Sanborn caused the default of the defendant County to be entered. Thus, one party defendant passed from the scene without making any defense whatever to the action.

On November 2, 1937, the defendants Johnstone filed their joint answer.

On January 17, 1939, being two years and three weeks after commencement of suit, the action was tried on the merits before Judge Horsky sitting without a jury and at the conclusion of such trial the cause was submitted for decision.

On August 25, 1939, Judge Horsky rendered and caused to be entered his judgment adjudging the defendant, Alexander B. Johnstone, to be the *equitable owner* of the property.

But two years and eight months elapsed from the commencement of Sanborn's quiet title suit to the entering of the trial court's judgment in the action.

On February 21, 1940, Sanborn appealed to the Supreme Court from the trial court's judgment.

In January 1941, the appeal was *first argued* before the Supreme Court, and in June 1941 such appeal was reargued before the appellate court.

On October 2, 1941, the Supreme Court pronounced its first decision reversing the trial court's judgment, all five justices concurring.

On January 3, 1942, on petition for rehearing, the Supreme Court amended its former opinion and judgment and again reversed the trial court's judgment. To the appellate court's majority opinion Mr. Justice Angstman wrote and filed a dissent based upon the refusal of the majority of the court to send the cause back to the District Court for a new trial. 113 Mont. at page 23, 120 P.2d 567.

On April 1, 1942, the Supreme Court's remittitur was issued and on April 17, 1942, the remittitur, opinion and final judgment of the Supreme Court, reversing the trial court's judgment and determining the rights of all the parties litigant were duly received, filed and entered in the District Court, in cause No. 16386.

On April 27, 1942, the successful appellant Sanborn served and filed his duly verified cost bill to which there were no objections. Thereupon Sanborn's quiet title suit became and was terminated, ended and closed.

Thus, but five years and four months elapsed from the commencement of Sanborn's suit in December 1936 to the filing and entering therein of the Supreme Court's final judgment in April 1942. In reversing the trial court's judgment of August 25, 1939, the Supreme Court declined to remand the cause to the trial court for a new trial or for the litigation of any issues not theretofore presented to either the trial or the appellate court.

The record conclusively shows that there was no ''want of diligent prosecution'' of Sanborn's quiet title suit No. 16386,

as is inaccurately, recklessly and wrongfully stated in the Supreme Court's void order of December 10, 1957, as its excuse for directing the issuance of a peremptory writ of prohibition in original proceeding No. 9792, and as is repeated as the one and only lame excuse for the making of Judge Loble's *void* judgment of dismissal that was entered on December 10, 1957, in cause No. 16386, at the direction and command of the Supreme Court's *void* order and writ of the same date.

Whence came the jurisdiction for either the Supreme Court or the District Court to dismiss a cause wherein the final judgment of the Supreme Court had been duly and regularly entered for more than fifteen years?

In State ex rel. Johnstone v. District Court, No. 9792, 132 Mont. 377, at page 380, 319 P.2d 957, at page 959, in speaking of Judge Horsky's *void* order of May 25, 1944, the majority opinion states: "Judge Horsky made the order pursuant to the mandate of this court."

Nothing could be more inaccurate. Judge Horsky's order is contrary to, and in conflict with, the remittitur, decision and final judgment of this court. It was made in defiance of this court's judgment pronounced on January 3, 1942. It is without support either in law, in fact, or in reason. Cause No. 16386 terminated and ended with the entering on April 17, 1942, of the Supreme Court's final judgment in the District Court. This marked the end of the trail so far as litigation in cause No. 16386 was concerned.

On November 20, 1958, the plaintiff Johnstone served and filed in district court cause No. 24875 his reply and answer to the answer and cross complaint of the defendant Sanborn.

As Exhibit A to his reply and answer, Johnstone attached and pleaded the majority opinion of the Supreme Court in original proceeding No. 9792 to which Sanborn was never made a party, but wherein the writ of prohibition issued. See State ex rel. Johnstone v. District Court et al., 132 Mont. 377, 319 P.2d 957.

As Exhibit B to his reply and answer, Johnstone attached and pleaded a copy of the judgment given and made on December 10, 1957, by District Judge Loble which purports to dismiss district court cause No. 16386, Sanborn v. Lewis and Clark County et al., 113 Mont. 1, 120 P.2d 567, wherein the Supreme Court's remittitur, opinion and *final judgment* had been duly and regularly filed and entered more than fifteen years before, to-wit, on April 17, 1942. The sole ground assigned for the pretended dismissal of cause No. 16386 was *"neglect and failure to diligently prosecute said action."*

The records of the Supreme Court conclusively show that there was no "neglect or failure" on the part of the plaintiff Sanborn "to diligently prosecute" his quiet title action No. 16386 from its commencement on December 26, 1936, to the entering of the Supreme Court's final judgment therein on April 17, 1942.

On December 9, 1958, the defendant Sanborn filed his reply to the plaintiff Johnstone's above reply and answer, whereupon issue was joined in cause No. 24875. On April 29, 1959, on written motion of the plaintiff Johnstone alleging inadvertence and mistake in original preparation of his reply and answer, Johnstone was granted leave to amend such pleading.

On May 11, 1959, cause No. 24875 was tried on the merits before Judge Loble sitting without a jury.

On August 27, 1959, Judge Loble made and filed written findings of fact and conclusions of law in the cause, and on August 31, 1959, Judge Loble rendered and caused to be entered his judgment in cause No. 24875 adjudging "that the title of plaintiff, Alexander B. Johnstone, be hereby quieted in him, the said plaintiff, as against the defendant, Bruce W. Sanborn, or any person or persons claiming through or under said defendant."

This is an appeal by the defendant, Bruce W. Sanborn, from the above-adverse judgment so entered against him.

The Supreme Court's holding in Sanborn's first appeal, bearing this court's No. 8082, Sanborn v. Lewis and Clark County et al., 113 Mont. 1, 120 P.2d 567, was that the tax deed issued to the defendant Lewis and Clark County, was void because the prescribed statutory notices, which were jurisdictional, had not been given. Lack of notice, being á denial of due process, is violative of the provisions of both the Constitution of the United States and the Constitution of the State of Montana.

It is quite evident from a careful examination of the record before this court that from the time of entering into the lease agreement with Johnstone on April 4, 1933, to the pronouncement on January 3, 1942, of the Supreme Court's amended opinion, decision and *final judgment* in appeal No. 8082, Sanborn v. Lewis and Clark County et al., supra, that it had not been shown that Sanborn, the true record owner, was unable to pay the taxes on the real property here involved, nor was it shown that he had lost possession of his property.

On the contrary, the record shows that on November 1, 1937, Sanborn deposited with the Clerk of the District Court in cause No. 16386, the sum of $1,213.41 to the use of Alexander B. Johnstone, the defendant in that action, to reimburse Johnstone for all the taxes he had theretofore paid and also to reimburse Johnstone for his reasonable outlays in preserving, protecting or improving the property, all of which deposit the Supreme Court, in its opinion and final judgment, in appeal No. 8082, Sanborn v. Lewis and Clark County et al., supra, specifically ordered paid to the Johnstones who were the respondents in appeal No. 8082, and who were defendants in district court cause No. 16386.

The respondents Johnstone failed, omitted and refused to accept or take down any part of Sanborn's $1,213.41 which on November 1, 1937, Sanborn deposited with the Clerk of the trial court where all of such sum has remained on deposit at all times since, to and including the date of the pronounce-

ment of this court's majority decision and opinion on November 30, 1960, in the instant appeal No. 10123.

The deposit at all times has been available to Johnstone to reimburse him for his outlay for taxes and for preserving or improving the property. Thus, with $1,213.41 on deposit to the use of the *tenant* Johnstone, it was impossible to show that the *landlord* Sanborn was either unable or unwilling to pay the taxes on his described property, nor could it be shown that Sanborn had lost possession of his lands and premises. On the day this dissent is being written, Sanborn's $1,213.41 is still on deposit in the office of the Clerk of the trial court.

Since the tax deed issued to Lewis and Clark County, under which Johnstone claimed an equitable title in the property under his contract to purchase from the county, was adjudged void it followed that the *tenant* Johnstone's possession of the described property was the possession of his *landlord* Sanborn.

In Storrow v. Green, 39 Cal.App. 123, 127, 178 P. 339, 341, the court said:

"Having established the relation of landlord and tenant between himself and Swales, and having entered into possession of the Swales' property by reason of the privileges acquired as such tenant, defendant would be presumed to be in occupancy thereafter of Swales' ground as a licensee or by permission, regardless of whether he continued to pay rental for it and until by some unequivocal act he gave notice of a change in his attitude from that of peaceful to hostile possessor."

In St. James Church of Christ Holiness v. Superior Court, 1955, 135 Cal.App.2d 352, 362, 287 P.2d 387, 393, it is said:

"As a general rule the possession of the tenant is that of his landlord. The possession of the tenant inures to the benefit of the landlord, and constitutes possession by the latter, for the purpose of securing to him [the landlord] the benefits of adverse possession and the bar of the statute of limitations. Code of Civ.Proc. § 326; 15 Cal. Jur. 670, § 79."

In Potrero Nuevo Land Co. v. All Persons Interested, 1916, 29 Cal.App. 743, 156 P. 876, 880, it is said:

"As a general rule, the possession of the tenant is that of his landlord, and will be so deemed until the contrary appears, and this rule affects all who may succeed to the possession, immediately or remotely, through or under the tenant. Hence, so long as the relation of landlord and tenant exists the tenant cannot acquire an adverse title as against his landlord. 1 R.C.L. p. 746." Also see Doolan v. McCauley et al., 66 Cal. 476, 6 P. 130.

Until the pronouncement on January 3, 1942, of the Supreme Court's amended opinion, decision and final judgment in Sanborn's first appeal No. 8082, Sanborn v. Lewis and Clark County et al., supra, there was no reversal or nullification of the judgment theretofore rendered in Johnstone's favor by District Judge Horsky in cause No. 16386 and until such pronouncement of January 3, 1942, Johnstone could not claim a termination of his lease from Sanborn under the clause quoted in the majority opinion which reads:

"It is understood and agreed that there are now delinquent taxes against this property and that if Lessor is unable to pay the taxes or should lose possession of the property, this lease shall be immediately terminated and Lessor shall not be responsible for any work theretofore done by Lessee."

Neither may the *tenant* Johnstone claim under the above-quoted clause subsequent to the date of the pronouncement of the Supreme Court's opinion and final judgment on January 3, 1942. This prohibition is by reason of the express provisions of R.C.M. 1947, § 93-2512, which reads:

"93-2512 (9023) *Relation of landlord and tenant as affecting adverse possession.* When the relation of landlord and tenant has existed between any persons, the possession of the tenant is deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy, or, where there has been no written lease, until the expiration of

ten years from the time of the last payment of rent, notwithstanding such tenant may have acquired another title, or may have claimed to hold adversely to his landlord. But such presumptions cannot be made after the periods prescribed in this section.''

Under the above statute, the possession of the *tenant*, Alexander B. Johnstone, is deemed the possession of the *landlord* until the expiration of ten years from the termination of the tenancy. It is only from and after the expiration of such ten-year period that adverse possession commences to run under the statute.

The undisputed facts in this case show that under no circumstances could Johnstone's *tenancy* be said to have terminated prior to December 31, 1935, being the date whereon the void writing purporting to be a tax deed was issued to Lewis and Clark County. Under section 93-2512, supra, an additional ten years from and after December 31, 1935, must be shown to have elapsed before possession by adverse possession by the tenant would begin to run, hence, the earliest date adverse possession could possibly have commenced to run would be December 31, 1945, and thereafter such adverse possession must be shown to have continued for an additional ten years being to and including December 31, 1955, before the *tenant* Johnstone would be entitled to even commence his instant quiet title action No. 24875, against his *landlord* Sanborn.

Clearly, under the most liberal view of the provisions of section 93-2512, supra, Johnstone's quiet title action No. 24875, so filed and commenced on March 8, 1955, was more than seven months premature and thus the *tenant* Johnstone could neither plead nor could he prove that he had been in adverse possession of his landlord's described real property for the minimum period of time prescribed and required by the provisions of section 93-2512, supra.

The majority opinion expresses ''considerable doubt as to whether [section 93-2512, supra] is valid in view of the hold-

ing in Lowery v. Garfield County, 122 Mont. 571, 208 P.2d 478'', supra, but it must be remembered that such statute has been the unchallenged law in this jurisdiction for more than eighty-three years having been adopted from the State of California in the year 1877, by the Tenth Regular Legislative Assembly of the Territory of Montana and enacted as section 37 at page 47 of the Montana Session Laws of 1877. The parent California statute is now known as section 326 of the California Code of Civil Procedure.

In Tewksbury v. MaGraff, 33 Cal. 237, at pages 244, 245, on appeal in an action of ejectment, the Supreme Court of California speaking through Associate Justice Sanderson said:

''Whether a tenant can dispute his landlord's title depends upon a variety of circumstances. The general rule is that he cannot, and that the estoppel continues, not to the end of the term merely, but to the end of the tenant's occupation, or where there has been a repudiation of the tenancy and a subsequent adverse holding by the tenant, until the Statute of Limitations has run in his favor. He cannot set up an outstanding title which he may have acquired. Before he can avail himself of such a title he must surrender the possession. (Doe on the demise of Knight v. Smythe, 4 M. & S. 348; Greeno v. Munson, 9 Vt. 37.) To say that he may set up an adverse title acquired by him to defeat a recovery by his landlord, after the term has expired, is to say that there is no estoppel, and that a tenant may always deny his landlord's title. (Wilson v. Cleaveland, 30 Cal. [192] 201.) To allow a party to obtain possession by entering under a lease, and then to disclaim, either before or after the expiration of the term, would be to encourage the very fraud and chicanery which the estoppel was designed to prevent. The estoppel rests upon considerations of public policy which, for obvious reasons, would be defeated in its purpose if one who has been put in possession of land by another should be allowed to controvert the title of the latter without first restoring him to as good a condition as he was in

before he parted with the possession. (Glen v. Gibson, 9 Barb. [634] 638.)''

Also see Standley v. Stephens, 66 Cal. 541, 6 P. 420, and Oneto v. Restano, 78 Cal. 374, 20 P. 743.

It is a rule of public policy that the possession of a *tenant* is the possession of his *landlord* and, by express statute, R.C.M. 1947, § 93-2512, ''the possession of the tenant is deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy'' where, as here, the tenant, at the very outset, took and entered into possession under and pursuant to the specific terms of a written lease. See Snyder v. Pine Grove Lumber Co., 40 Cal.App.2d 660, 105 P.2d 369.

Under the express terms of section 93-2512, supra, a *tenant* in possession of his *landlord's* real property cannot dispute his landlord's title (Tewksbury v. MaGraff, 33 Cal. 237, supra), nor may the *tenant* hold adversely to his *landlord* while holding under the lease. Swartzbaugh v. Sampson, 11 Cal.App.2d 451, 54 P.2d 73, at page 79. The estoppel continues to the end of the *tenant's occupation* of the real property. The tax deed upon which the *tenant* Johnstone relied for his claimed title having been adjudged void, on January 3, 1942, by the Supreme Court in Sanborn v. Lewis and Clark County et al., supra, the *tenant* Johnstone's possession of his *landlord* Sanborn's 1,120 acre ranch became, was and is the possession of the *landlord* Sanborn.

Had the five Justices constituting the Supreme Court on April 17, 1942, when the remittitur, on appeal No. 8082, was filed and entered in the District Court in Sanborn's quiet title action No. 16386, thereafter desired to make any alteration, change or modification in their opinion and final judgment therein, other than to correct misprisions or obvious clerical errors, it would have been necessary to first order the recall of the remittitur and, thus reinvest the Supreme Court with the necessary jurisdiction to enable it to make such contemplated change or alteration in its opinion and judgment. At no time

was the Supreme Court's remittitur, so filed in Sanborn's quiet title action No. 16386, ever recalled and without such recall the Supreme Court was wholly without jurisdiction to make any alteration or change in its opinion and final judgment or to order the dismissal of such quiet title action No. 16386.

The Supreme Court should not lend itself to the quieting of title to real property by any such device as an original proceeding for a writ of prohibition initiated by petition filed direct in the Supreme Court to which original proceeding the true record owner of the property involved was never made a party.

In such original proceeding, seeking the issuance of a writ, commenced on March 2, 1957, being more than fifteen years *after* the Supreme Court had pronounced its opinion and final judgment of January 3, 1942, the filing and entering whereof, on April 17, 1942, in District Court cause No. 16386, constituted "the final determination of the rights of the parties" in such action (R.C.M.1947, § 93-4701), the Supreme Court was wholly without authority, power or jurisdiction to issue its order and writ of December 10, 1957, commanding District Judge Loble to enter in district court cause No. 16386 "judgment * * * dismissing the same for want of diligent prosecution".

Bruce W. Sanborn *won* his quiet title suit No. 16386 on January 3, 1942, when the Supreme Court pronounced its decision and *final judgment in appeal No. 8082,* Sanborn v. Lewis and Clark County, et al., supra.

Bruce W. Sanborn *lost* his 1,120 acre ranch on December 10, 1957, when the Supreme Court, in original proceeding No. 9792, State ex rel. Johnstone v. District Court for Lewis and Clark County et al., supra, commanded District Judge Loble to enter a judgment dismissing Sanborn's quiet title action No. 16386, which action had terminated and ended fifteen years before, upon the filing and entering therein, of the Supreme

Court's *final judgment* of January 3, 1942. Sanborn v. Lewis and Clark County et al., supra.

Bruce W. Sanborn *lost* his ranch for the second time on November 30, 1960, by the pronouncement of the majority opinion and decision on the instant appeal No. 10123.

In my opinion the facts, the law and the precedent established by valid decisions of this court are with Bruce W. Sanborn.

I protest the *taking* of Sanborn's ranch and the *presenting* of it to his *tenant*.

The $1,213.41 which Sanborn, on November 1, 1937, deposited in the office of the Clerk of the District Court is still on deposit there.

*Quare*: Who gets Sanborn's $1,213.41?

Does Sanborn lose both his ranch and his money so deposited?